ANNA WALLIN, *Respondent*, v. MASSACHUSETTS BONDING
& INSURANCE COMPANY, *Appellant*.[1]

[1]Reported in 277 Pac. 999.

*J. E. Stewart* and *Pierce & Beckman,* for appellant.
*John C. Hogan,* for respondent.

MILLARD, J.—The wife of insured, as beneficiary, brought this action to recover on two policies of accident insurance. The defendant appeals from the judgment entered by the court on the verdict of the jury in favor of the plaintiff.

The policies, though differing in the sums insured, are alike in all other particulars. They were issued by the appellant, and insured August Wallin against

". . . the effects resulting directly and exclusively of all other causes, from bodily injury sustained solely through external, violent and accidental means (excluding suicide, sane or insane) . . ."

At the time the policies were issued, Wallin's occupation was given as "Contractor—roadmaking supervising."

At five o'clock on the morning of January 23, 1928, the mangled body of the insured was discovered near his wrecked car on the highway a short distance from Shelton, Washington. No one was found who witnessed the tragedy, which occurred between the hours of four and five a. m. on January 23. The front seat, the top of the car and the larger portion of the windshield were missing from the automobile, and the floor boards had been blown down into the roadway. The dismembered body and shattered automobile indicated that the death of Wallin was caused by an explosion. No inquest was held. The coroner's certificate assigned, as the cause of death, "killed by an explosion of dynamite carried in car. Accidental death." The coroner testified that, while his certificate contained the foregoing statement, he did not pretend to know just what killed Wallin. "I just concluded at the time that something had exploded, so I put it that way."

The coroner opined from the appearance of the automobile that the explosion occurred between the front and back seats. Another witness thought the explosion took place just inside the front door, but not under the front seat; that it could not have been a box of dynamite caps, as no marks from caps were disclosed. The witnesses who viewed the wrecked car agreed that an explosion had occurred. The testimony as to what the explosion was, hardly rises above the dignity of conjecture.

Wallin was a road contractor. He had a contract with the state for clearing and grading two miles of road near Raymond, Washington. Near that point, he had stored, and in the custody of one of his employees, dynamite and dynamite caps to be used in the road work. The last purchase of dynamite was made in October, 1927. The explosive was hauled by one of Wallin's employees, and stored in the powder house. That Wallin ever carried dynamite, dynamite caps or explosives of any kind in his automobile, has not been established. The investigation by appellant and by respondent did not reveal that the insured purchased any explosives except that bought some months previously and stored near Raymond. The last time he was in Raymond or on the work under his contract, was December 17, 1927, more than a month prior to his death. On that date, he went to his home in Montesano, a distance of approximately one hundred and fifty miles from Raymond. On January 17, 1928, Wallin, unaccompanied, left Montesano in his Chevrolet touring automobile. His suit case was packed by his wife, who testified that no dynamite or dynamite caps were in the case. On January 15, two days before Wallin departed, his wife and son washed the automobile. They removed everything from the

interior of the car and also emptied and cleaned the tool box at the same time. They were positive that no explosive of any kind was then in the car. It was Wallin's stated intention to return to Raymond following his search for witnesses in an action that had been instituted against him by one of his subcontractors. However, the afternoon of his departure, he telephoned to his wife that he would not go to Raymond, but would return to his home in Montesano the following Saturday or Sunday. The last word received from the insured was his telephone message from Shelton to his wife Saturday, January 21, that he would be home that night or the next morning.

As an affirmative defense to the action, the appellant pleaded that, the insured having changed his occupation to that of "user, handler and custodian" of explosives, and his accidental death being due to the hazards of such changed occupation, the appellant is entitled to prorate payment of the claim of respondent under the provision of the policies that:

"In the event that the insured is injured after having changed his occupation to one classified by the company as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified, the company will pay only such portion of the indemnities provided in the policy as the premiums paid would have purchased at the rate, but within the limits so fixed by the company for such more hazardous occupation."

When the cause was called for trial, counsel for appellant orally requested permission to file a plea to abate the action as premature. The motion was denied. The verdict of the jury was in favor of the beneficiary for the full amount of the insurance. By special verdict, the jury found that Wallin met his death as the result of an accident, and at the time of

his death he was not doing any act or thing pertaining to the occupation of handling or custodian of explosives.

■ Appellant, in its brief, states that,

"In the instant case adequate proofs never were furnished by the claimant, and for that reason she has never had the right under the policy to begin or prosecute this action."

Although not properly presented, we will consider this phase of the controversy, as it is closely related to the question raised by the first assignment of error.

The policies provide that, upon receipt of notice of the accidental death of the insured,

". . . the company will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not so furnished within fifteen days after the receipt of such notice the claimant will be deemed to have complied with the requirements of this policy as to proof of loss upon submitting within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, character and extent of the loss for which claim is made."

Appellant was immediately notified of the death of the insured, and was requested, not later than January 26, to send the necessary blank forms on which to submit proofs of loss. On February 9, the respondent, not having received the blank forms, transmitted proof of loss consisting of her affidavit, copy of coroner's certificate of death, and affidavits of two acquaintances of the deceased as to the death, identification of the body and the cause of death. Respondent's affidavit recited that,

". . . August Wallin was accidentally killed by an explosion of some explosive there occurring accidentally killing the said August Wallin instantly."

One of the accompanying affidavits was to the effect that Wallin was killed

".  .  . when the dynamite that had been in his car was accidentally exploded."

On February 1, counsel for respondent, replying to letter of January 27, from appellant's manager at Portland, Oregon, requesting

".  .  . to be advised just what the actual occupation and the duties of the policy holder were at the time he was killed, and if there were explosives in the machine we should be advised where and when they were purchased and what he was doing with them,"

advised that,

"Mr. Wallin was a general contractor on state highways and at the time of his death had or was carrying on one or more such contracts. As to the circumstances concerning his death, he was traveling along the highway about 6 a. m. It was dark and foggy and on a gravel road and his car got partly off the highway apparently, and he was trying to get his car straightened out and had taken his jack out of the tool box of the machine to raise the car, where apparently he was carrying dynamite for use in his work as a contractor, and the explosion occurred in that way. There was no one with him at the time of the accident, and no one saw the accident. The circumstantial evidence is clear that the accident happened from an explosion in his car. There was not the slightest evidence of suicide or foul play. Please send the blank forms on."

In her reply, respondent pleaded that the appellant waived the furnishing of proofs of loss by failure to supply the blank forms within fifteen days after having received notice of Wallin's death, and that she complied with the provision for filing

".  .  . written proof covering the occurrence, character and extent of the loss for which claim is made,"

by submitting sworn proof of loss to appellant on February 9. The action on the policies was commenced sixty-one days later. From appellant's letter of March 27, we are convinced that forms were not sent to respondent prior to February 20, if at all, which was twenty-five days subsequent to request for same. The material part of appellant's letter of March 27, reads as follows:

"The proofs you submitted did not contain sufficient information and the ones we furnished on February 20 should be completed and sent here. . . ."

Does appellant object to the sufficiency of the proofs because not submitted on its forms? Appellant may not now be heard to complain on that ground, because it failed for at least twenty-five days to supply the forms, thereby waiving the making of proofs in that manner. The respondent furnished on improvised forms such information as was within her reasonable efforts to obtain. The appellant is not entitled to more. We are of the view that respondent complied with the requirement of

". . . written proof covering the occurrence, character and extent of the loss for which claim is made."

■ Appellant first assigns as error the refusal of the court to grant the motion to abate the action. Appellant's position is that, under the terms of the policies providing

". . . no action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after proof of loss has been filed in accordance with the requirements of this policy,"

the maturity of the right of respondent to bring an action on the policies has been postponed sixty days by reason of her filing new proofs of loss five days preceding this trial. The amendatory proofs were

mailed to the appellant's manager at Portland June 20, and consist of three affidavits. Respondent's affidavit is to the effect that she

". . . does not know whether he (Wallin) was killed by an explosion or whether he was killed before the explosion occurred. Circumstances coming to her knowledge since said proof of death was made makes it necessary for her to make this change."

Two of Wallin's acquaintances seek to explain the affidavits filed with the original proofs. The first of these two affiants recites that he was not a witness to the accident and that he

". . . does not know what the explosive was, but is very positive that August Wallin, at the time, was not carrying dynamite or other explosive in his car, at least not knowingly."

The other affiant declares that he

". . . does not know whether the explosion killed the said August Wallin or whether the said August Wallin may have been dead before the explosion occurred."

Appellant complains that the supplemental affidavits set up facts essentially different from those which it was prepared to meet, and that it is entitled to sixty days by the terms of the policies for further investigation. Investigate what? Respondent's amended complaint clearly avers that the

". . . said August Wallin was accidentally killed by some explosion or other thing to the plaintiff unknown."

The appellant had five months, from the date of the first request for forms on which to make proofs of loss, to the date of the trial, in which to make investigation. The amendatory proofs simply emphasize a fact of which the appellant had previously been apprised, that no one witnessed the accident, and, therefore, the

respondent and the two acquaintances are unable from personal knowledge to say how the accident occurred. There was no dispute as to the accidental death. The original proofs complied with the terms of the policies. Everything that could be even surmised was timely related by respondent to appellant. Though the original proofs introduced in evidence contained admissions making a *prima facie* showing that the death of the insured, while accidental, was due to an excepted hazard, the respondent is not precluded from showing, either by the amended proofs prior to the trial or by evidence at the trial, that the representations were made in ignorance of the true facts.

We are committed to the rule which permits the statements in the proofs of loss to be contradicted on the trial, when it does not appear that the usual elements of estoppel are present. In *Armstrong v. Modern Woodmen of America*, 93 Wash. 352, 160 Pac. 946, in an action upon a contract of mutual benefit insurance, it is said:

"Statements made in the proofs of death are not conclusive on the beneficiary, in the trial of the case, in the absence of facts creating an estoppel. The beneficiary has the right to controvert the statements made in the proofs of death."

Very few authorities are in harmony with the strict and narrow interpretation contended for by appellant. The facts in this case do not justify any modification of the rule enunciated in *Armstrong v. Modern Woodmen of America, supra.* The beneficiary under an accident insurance policy may explain, qualify or correct the original proofs of loss, "in the absence of facts creating an estoppel," not only five days before the trial of her action, but by evidence during the trial. Under the facts of this case, it is clear that the action was not prematurely brought.

■ The court very properly refused permission to file the plea in abatement.

"Under the code, the pleading upon the part of the defendant is restricted to the demurrer and answer. No intermediate or additional plea is permitted, and all matter, whether in abatement or in bar should be united in the same answer. If the objection to the complaint appears upon its face, defendant's remedy is to demur. Failing to do so, he is deemed to have waived the objection. If the objection is not disclosed by the complaint, then the remedy of defendant is to set it up by answer." *State ex rel. Holgate v. Superior Court,* 21 Wash. 33, 56 Pac. 931.

Appellant was not denied leave to amend its answer, nor was the appellant denied the right to introduce evidence on any matter constituting a defense. While it does not appear that leave of court was granted therefor, appellant filed "a further and separate defense and by way of a plea in abatement." Whether appellant thereby "united in the same answer" the matter in abatement and in bar, need not be decided, in view of what we have already said.

■ The refusal of the court to give to the jury appellant's requested instructions is next assigned as error. Appellant has not properly preserved the question for review in this court. The record shows the following:

"The Court: Do you desire to make exceptions to the instructions? Mr. Pierce: We would like to except, on behalf of the defendant, to the refusal of the instructions asked for by the defendant, and not given. The Court: Exceptions will be allowed and I will mark those."

Appellant requested a number of instructions. The instructions were not lettered, neither were they designated by numbers. Over the signature of the trial judge, appears, "Refused except as given and excep-

tion allowed." Some of the requested instructions, particularly the one as to the burden of proof, were clearly improper. Instruction No. 5 given by the court is word for word the same as one of the instructions requested by appellant. Rule VI of this court (Rem. 1927 Sup., § 308-6) requires exceptions to be specific:

"Exceptions to a charge to a jury, or to a refusal to give as a part of the charge instructions requested in writing may be taken in the absence of the jury by any party at the conclusion of the charge and before the reception of the verdict. Such exceptions may be either oral or in writing, and shall be noted by the court, and shall specify the paragraph or particular parts of the charge excepted to, and the requested instructions the refusal to give which is excepted to, and shall be sufficiently specific to apprise the judge of the points of law or questions of fact in dispute."

Manifestly, the general exception to the refusal of instructions asked does not present to us any question for review.

■ Instruction No. 12 given by the court is assigned as erroneous. This instruction tells the jury that the burden is on the defendant to prove the affirmative defense of change of occupation by the insured to a more hazardous one, and that the risks of such changed occupation were the proximate cause of his death. The instruction is correct.

In *Starr v. Aetna Life Ins. Co.*, 41 Wash. 199, 83 Pac. 113, 4 L. R. A. (N. S.) 636, the rule is stated:

"Almost universal authority imposes upon the insurance company the burden of establishing the fact, in an action on an accident insurance policy, that the accident happened by reason of something that was excepted from the provisions of the policy; and that the burden is not imposed upon the insured to affirmatively show that the accident did not occur by reason of any or all of the exceptions incorporated in the policy.

" ' . . . The burden of proof is on the plaintiff to show that the injury or death was due to accidental or other means specified in the policy, . . . The burden rests on the defendant to show that the policy has been avoided by reason of a breach of some conditions precedent, or that the injury or death was caused by some act which is made an exception to the risk in the policy, or that the action was not brought within the time required by the policy.' "

We do not agree that the burden of proof was shifted by the fact that the respondent introduced in evidence proofs of death containing statements tending to show that the insured was killed while within a risk excepted in the policies. The amendatory affidavits explained the original proofs of loss. She was not estopped under the facts of this case to correct, by evidence during the trial, the original proofs. At most, her statements in the first proofs were admissions. As to those representations, the court instructed the jury.

"If you should find that these proofs of loss contain any statments that might be considered as detrimental to the plaintiff or as aiding or establishing or tending to establish the defense of the defendant, you should consider them in the light of evidence for such purpose. You should also take them into consideration in arriving at your verdict, the same as other evidence introduced in the case."

We find no error in the record and the judgment is affirmed.

PARKER, MAIN, FULLERTON, and FRENCH, JJ., concur.