[No. 25284. Department Two. December 27, 1934.]

KATE SELOVER, *Appellant* v. AETNA LIFE INSURANCE COMPANY, *Respondent.*[1]

[1]Reported in 38 P. (2d) 1059.

*William A. Herren, Edgar S. Hadley,* and *Eugene F. Hooper,* for appellant.

*J. Speed Smith* and *Henry Elliott, Jr.,* for respondent.

STEINERT, J.—Plaintiff brought this action upon two accident insurance policies, seeking to recover the principal sums thereof on account of the death of the insured. Trial by jury resulted in a verdict for defendant. Motions for judgment notwithstanding the verdict and for a new trial having been denied, judgment was entered, from which plaintiff appeals.

Some years ago, the respondent insurance company issued to John W. Selover two policies of insurance, each in the principal sum of ten thousand dollars, insuring him against loss, resulting directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means, *suicide (sane or insane) not included.* The policies were in full force and effect on July 15, 1932, the day on which the insured came to his death. Appellant was named as the death beneficiary in both policies.

Mr. Selover had, for many years, been engaged in business in Seattle as a fruit and produce broker. The business was incorporated under the name · of J. W. Selover & Son, Inc., all of its stock, except one share, being owned by Mr. Selover.

On the morning of July 15, 1932, Mr. Selover arose at about six o'clock, apparently intending to go to his place of business early, as he frequently did when shipments of fruit or produce were expected. He left the house, and, it seems, went to the garage in which he kept his car. The garage was located several blocks away from his home.

Shortly before noon, Mr. Selover not having appeared at the office, one of the employees telephoned Mrs. Selover and made inquiry concerning him. Surprised at the information that Mr. Selover had not gone to the office, Mrs. Selover, accompanied by her house maid, went over to the garage. According to her testimony, when she arrived at the garage she heard the motor of the car running and saw that one of the garage doors was closed but not latched, and that the other door was standing ajar about six or eight inches. One of the panes of the glass portion of one of the doors had been broken sometime before, and had been replaced with a double-mesh screen. Throwing open the doors of the garage, she found Mr. Selover seated in the automobile directly behind the steering wheel, his left foot resting on the left-hand running board, his left hand grasping a wiping rag by his side, and his right hand lying in his lap.

In response to her screams, a street car operator and two other men came to her assistance. The men pushed the car out of the garage, took Mr. Selover therefrom, and laid him upon the ground. A physician, the coroner and the fire department were notified. The physician, upon arrival, administered a heart stimu-

lant, but without any response. A lieutenant of the fire department used a pulmotor upon the body for about fifty-two minutes, but without success. The coroner, after an examination, pronounced Mr. Selover dead of asphyxiation from carbon monoxide gas.

The street car operator, the coroner and the fireman were called at the trial as witnesses for respondent. The operator testified that, upon his arrival at the scene, Mrs. Selover was standing by the automobile, and that he heard her say, "Why did you do it?" or "Why did he do it?" He also testified that the windows of the doors of the automobile were down, and that he observed that both garage doors dragged in opening and closing; further, that he did not see any rag in Mr. Selover's hand. The fireman testified that Mrs. Selover had told him, at the time, that Mr. Selover had been in the garage with the doors closed and the motor running, since six-thirty that morning. The coroner testified that he had talked to Mrs. Selover at the time of his call, and had inquired of her particularly about the doors; that she had said that the doors were closed. He also testified that he had tried the doors and found that, on account of their contacting the ground, it would be difficult for them to blow closed.

As may be expected, much of the evidence was directed toward the previous condition of Mr. Selover's health and financial affairs. From the evidence adduced, divergent conclusions are strenuously urged by counsel. There was evidence to the effect that, although Mr. Selover had been ill shortly before his death, it was only of a temporary nature; that, the night before his death, friends had visited at his home and that he was then in good spirits. On the other hand, there was evidence that, due to financial worries, Mr. Selover was on the brink of nervous prostration.

As to his finances, there was evidence that, although the business had been falling off, and although Mr. Selover was then in debt, yet the conditions were not such as would drive a normal man to distraction or furnish a motive for suicide. On the other hand, there was evidence to the effect that Mr. Selover required from five to six hundred dollars a month for his personal and household expenses; that he kept but one bank account for his business and his personal affairs; that his account with the company was overdrawn to the extent of sixty-seven hundred dollars; that certain shipments on consignment, amounting to about $278, had not been paid for; that there was owing to an associate in the business, who worked on a profit-sharing basis, the sum of $1,150; and that, for some time past, the business had made no profit whatever.

The assignments of error may be grouped under two heads: (1) the refusal of the court to grant the motion for judgment notwithstanding the verdict; this assignment is rested upon appellant's contention that there was no evidence "whereby the jury could base a finding of death other than by accidental means;" (2) error in the giving of certain instructions and the refusal to give certain others, requested by appellant; these assignments furnish the basis for appellant's motion for a new trial.

■ As to the first assignment, suffice it to say that our consideration of the record convinces us that the question whether death was accidental or suicidal was, under the, evidence, a matter for the jury to determine. The motion for judgment notwithstanding the verdict was, therefore, properly denied.

■ The other group of assignments presents more difficult questions. After instructing the jury that the burden was upon the plaintiff [appellant] to show by a fair preponderance of the evidence that the in-

sured met his death by accidental asphyxiation from carbon monoxide gas, the court gave its instructions No. 3 and No. 7, as follows:

"No. 3.

"You are instructed further that the burden is not upon the defendant to show that the insured committed suicide, but the burden is upon the plaintiff to show that he met his death from accidental means as alleged, and if there is evidence tending to show that the insured took his own life and such evidence, if any, causes you to hesitate and to be in doubt as to the cause of death, then your verdict would have to be for the defendant."

"No. 7.

"I instruct you further that presumption of law is against suicide, but that such presumption falls to the ground when there is any competent evidence tending to show that death was caused by other means. If, therefore, you find that there is no evidence in this case tending to show that the deceased intended to commit suicide, then I instruct you that the presumption of law is that his death was accidental, but if there is evidence tending to show that the deceased intended to and did commit suicide, then this presumption does not apply and the burden would be on the plaintiff to show that his death was caused by accidental means and not by suicide."

The appellant requested instructions to the effect that the burden was upon respondent to show by clear and satisfactory evidence that death was the result of suicide, and that the burden was not sustained by proof of motive alone with circumstances probably indicating suicide, if from the evidence there was equal probability that death was accidental.

The question presented by the court's instructions and those requested by appellant relates to the burden of proof and to the force and extent of the presumption against suicide. Respondent contends that the

burden of proof lay upon appellant, *throughout the case,* to show that death was accidental. Appellant contends that, inasmuch as death through natural causes was not involved, and since the only question was whether death was accidental or was the result of suicide, and appellant having made a *prima facie* case of accidental death, the burden was upon respondent to establish suicide. Appellant further contends that respondent must meet that burden by such evidence as excludes, with reasonable certainty, every hypothesis of death by accident.

Respecting the question of the burden of proof and the effect of the presumption of law, we may say at the outset that, while judicial discussion of these subjects, in cases of this kind, has been almost limitless, there is a most serious and irreconcilable conflict in the decisions. To review here the many pertinent cases, would carry this opinion to an inordinate length, and in the end would be profitless, for it would do no more than to substantiate our statement that the holdings are in hopeless conflict. We will, therefore, do no more than to give a general statement of the principles announced in the various decisions and a reference to convenient sources of authority upon the subject.

In 8 Couch Cyc. of Insurance Law, § 2231, under the chapter on ''Evidence,'' it is said:

''In jurisdictions where a distinction is drawn between accident policies, wherein the plaintiff has the burden of bringing his case within the terms of the policy by affirmatively showing accidental death, or death by accidental means, and ordinary life insurance policies, where liability follows a showing of death unless there is an affirmative showing that it was within an exception, such as suicide, for instance, the plaintiff in an action on an accident policy has the burden of proving the accidental nature of insured's death, to do which suicide must be negatived; and this

notwithstanding the presumption against suicide, since such presumption, it has been said, does not change the burden of proof in the first instance. In fact, the presumption against suicide is rebuttable, and as such is not evidence, but a rule of law which operates merely to throw upon the party against whom it is raised the duty of going forward with the evidence, and does not relieve the plaintiff of the burden of proving death by accident.''

The notes to this statement, brought down in the 1933 supplement, cite many cases in support thereof.

On the other hand, 6 Cooley's Briefs on Insurance (2d Ed.), under the title ''Suicide as an excepted risk,'' makes the following statements:

''As a defense based on the condition making suicide an excepted risk is an affirmative one, the burden of proof that the insured committed suicide is on the insurer.'' (p. 5460)

''Of course, where there is no evidence as to the cause of death, it will be presumed that it was from natural causes. But the principle may be carried still further, and it may be regarded as a settled rule that, when the circumstances of death are such that it might have resulted from negligence, accident, or suicide, the presumption is against death by suicide.'' (p. 5454)

These statements are accompanied by notes brought down to 1932, citing a vast array of cases.

In 5 Joyce on Insurance, (2d Ed.) §§ 3773, 3774 and 3791, p. 6178 *et seq.*, these various statements, in themselves conflicting, again appear, and are likewise supported with ample citation of authority. The cases thus offered for consideration extend from the Atlantic to the Pacific, from the border to the gulf. One may read them until he is enlightened, possibly to the point of confusion. One must finally conclude that each state follows its own bent, and that, even in particular states, there is often conflict.

We turn then to our own decisions for guidance. The question, in principle, seems to have arisen long ago, and to have been definitely settled without deviation. If the matter, therefore, is one of *stare decisis*, it can make little difference what other courts may have decided, nor even whether the better logic is to the contrary.

In *Starr v. Aetna Life Ins. Co.*, 41 Wash. 199, 83 Pac. 113, 4 L. R. A. (N. S.) 636 (further annotated in 50 L. R. A. (N. S.) 1006), an accident insurance policy contained a provision reciting that

"This insurance does not cover disappearance nor suicide, sane or insane, . . . nor does it cover . . . entering or trying to enter or leave a moving conveyance using steam or electricity as a motive power . . . being on any railroad bridge or right of way except at established crossings of such roads with public highways."

As a result of falling or being thrown under a train, the insured sustained injuries from which he shortly died. The complaint set up "death by accident, the provisions of the policy, etc., and all the allegations usual in such a case." The answer averred, among other things, that the insured, at the time of his injury, was trying to board a moving train at a place other than a station, or was trying to commit suicide. At the conclusion of the evidence, the case was taken from the jury, and a judgment of dismissal was entered. The beneficiary of the insured took an appeal.

Adopting as the basis of its reasoning the principle that "insurance policies are to be construed in favor of the insured, and most strongly against insurance companies," this court met the question now before us in the following language:

"In conformity with this rule, an examination of the subject shows that almost universal authority imposes upon the insurance company the burden of

establishing the fact, in an action on an accident insurance policy, that the accident happened by reason of something that was excepted from the provisions of the policy; and that the burden is not imposed upon the insured to affirmatively show that the accident did not occur by reason of any or all of the exceptions incorporated in the policy. The rule is thus announced in 1 Cyc. 289:

" 'As to accidental character of injury. On an issue as to whether the injury to or death of the insured was caused by accidental means or by some cause excepted by the policy, the legal presumption is against the insanity of insured, intentional injuries by third persons, lack of due care and diligence, self-inflicted injuries, and suicide. These presumptions may be overcome, however, by facts and circumstances establishing the contrary.'

"Further, under the head of Burden of Proof:

" 'The burden of proof is on plaintiff to show that the injury or death was due to accidental or other means specified in the policy, . . . The burden rests on the defendant to show that the policy has been avoided by reason of a breach of some condition precedent, or that the injury or death was caused by some act which is made an exception to the risk in the policy, or that the action was not brought within the time required by the policy.' "

After citing and quoting from several authorities, the court says further, on p. 206 of the state report:

"Another carefully prepared opinion is that of Judge Day of the United States circuit court, in the case of *Standard Life & Acc. Ins. Co. v. Thornton,* 100 Fed. 582, 49 L. R. A. 116, where, after an analysis and review of the authorities, it was said:

" 'This presumption must stand in the case, and be decisive of it, until overcome by testimony which shall outweigh the presumption. It casts upon the defendant who claims that the death was intentional the burden of establishing it by a *preponderance of testimony.*' " (Italics ours.)

And, finally, the court said on p. 207:

"But it is needless to quote authority, for the overwhelming weight of judicial opinion sustains this rule. . . . an examination of the authorities on this proposition, together with the reasoning advanced to sustain the decisions, convinces us that the appellant's contention must be sustained, not only by the numerical strength of decision but by the weight of logic. . . . A *prima facie* case having been made out by the appellant, the negligence of the insured in violating any of the excepted clauses in the contract must be proven by the respondent."

The doctrine of that case has never been repudiated nor departed from by this court. On the other hand, the case has been on several occasions approvingly cited and quoted from. *Buckley v. Massachusetts Bonding & Ins. Co.*, 113 Wash. 13, 192 Pac. 924; *Wallin v. Massachusetts Bonding & Ins. Co.*, 152 Wash. 272, 282, 277 Pac. 999; *Bjorklund v. Continental Casualty Co.*, 161 Wash. 340, 346, 297 Pac. 155.

In the *Wallin* case, this court approved an instruction telling the jury that the burden is on the defendant to prove an affirmative defense of change of occupation by the insured to a more hazardous one.

In the *Bjorklund* case, it was said:

"The burden rests on the insurer to show that the injury or death was caused by some act which is made an exception to the risk in the policy."

It is interesting to note that the case of *Standard Life & Acc. Ins. Co. v. Thornton*, 100 Fed. 582, 49 L. R. A. 116, from which quotation was made in the *Starr* case, has, in recent years, been discussed by a court of the same circuit, in *New York Life Ins. Co. v. Ross* (1928), 30 Fed. (2d) 80. In that case, the court approved an instruction to the effect that, where the facts and circumstances *leave in doubt* the question whether the death was caused by accident or by suicide,

a presumption that it was accidental, founded upon observation of human nature and life as a whole, arises. It is also interesting to note that, while the court was of the opinion that an instruction placing the burden upon the defendant, not only of going forward with the evidence after the presumption has once attached, but also of overcoming such presumption by a preponderance of the evidence, was contrary to the well-established doctrines of presumption and burden of proof, yet it concluded that, under the doctrine of *stare decisis,* the rule established by the former cases had become the law of all cases presenting the same question.

We might well conclude our own discussion of this branch of the case by saying that, despite the conflicting rule with respect to the extent and effect of a presumption of law, as laid down in *Scarpelli v. Washington Water Power Co.,* 63 Wash. 18, 114 Pac. 870, *Nicholson v. Neary,* 77 Wash. 294, 137 Pac. 492, *Welch v. Creech,* 88 Wash. 429, 153 Pac. 355, L. R. A. 1918A, 353, *Anning v. Rothschild & Co.,* 130 Wash. 232, 226 Pac. 1013, and *Reinhart v. Oregon-Washington R. & N. Co.,* 174 Wash. 320, 24 P. (2d) 615, it is now settled law in this state that, the presumption against suicide having once attached, it remains in the case until overcome by evidence to the contrary, and that the burden of overcoming the presumption is upon the insurance company. But we do not think that it really can be said that there is any conflict in the two rules. We say this for two reasons. In the first place, where the contrary evidence is based upon inference drawn from circumstantial facts, as was the case here, then the presumption is not overcome, *as a matter of law,* and the question becomes one for the jury. In the second place, the appellant

having made out a *prima facie* case, suicide was an affirmative defense, and the burden was upon the party alleging it to establish such defense. The issue being in conflict under the evidence, the question again becomes one for the jury to decide. In our opinion, the court erred in giving its instructions Nos. 3 and 7.

Having determined that suicide is an affirmative defense and that the burden is upon the insurance company to establish it, the next question is: What degree of proof is necessary to establish the defense? Here, again, the authorities are in serious conflict. Some hold that it must be established by the preponderance of the evidence. Others hold that it must be by proof that is clear and satisfactory, or clear, cogent and convincing. Still others hold that the proof must be such as to exclude every other reasonable hypothesis than that of suicide. Again we refer to the encyclopediæ touching the particular questions, for access to the cases. 8 Couch Cyc. of Insurance Law, § 2231, pp. 7252-3; 6 Cooley's Briefs on Insurance (2d Ed.) pp. 5474, *et seq.*

The *Starr* case, *supra,* quoted with approval from *Standard Life & Acc. Ins. Co. v. Thornton,* 100 Fed. 582, 49 L. R. A. 116, wherein it was held that the presumption stood in the case until it was overcome by testimony that outweighed it, and that the burden was upon the defendant to establish intentional death *by a preponderance of testimony.* Whatever may be the holding in other courts, we think that the better and more just rule is to require only a preponderance of evidence, and not the higher degree, as it is sometimes called. After all, the presumption is not evidence, but only a conclusion. It is simply a rule of law indulged in aid of plaintiff in making a *prima facie* case. Although it stands in the case until overcome by evidence to the contrary, yet when it is met with

evidence sufficient in weight to overcome it, the presumption must yield.

As a summary of what we have said, we deduce the following rules to be applicable to cases of the present kind: (1) The burden is upon the plaintiff to show by a preponderance of the evidence that death was caused by external, violent and accidental means; (2) that upon a showing of death by external and violent means, the law raises the presumption that death was accidental, and upon such showing, aided by the presumption, a *prima facie* case for plaintiff is made; (3) that the presumption remains in the case until it is overcome by evidence to the contrary; and (4) that suicide is an affirmative defense, and must be established by the defendant by a preponderance of the evidence.

■ Appellant finally complains of an instruction given by the court wherein the jury was told that, when goods are shipped to a broker on consignment for sale, the proceeds over and above the broker's commission and freight charges belong to the shipper, and that the broker has no right to the use of the money for any purpose of his own. The exception to the instruction was not that it did not correctly state the law, but merely that there was no evidence to justify it. We think that there was. There was evidence from which the jury could have concluded that, at the time of Mr. Selover's death, there was a balance of only $86 in the bank, and that he had collected the proceeds of three shipments of produce, amounting to $278, the major portion of which amount belonged to the shipper and was unpaid. The evidence was proper as presenting a basis of inference on the part of the jury in the consideration of the circumstances under which the insured's death occurred. The instruction was, therefore, proper.

For the reasons that we have hereinbefore assigned,

250

the judgment is reversed, with direction to the trial court to grant a new trial.

BEALS, C. J., MITCHELL, HOLCOMB, and BLAKE, JJ., concur.

