14204

## WADE v. METROPOLITAN LIFE INS. CO.

(183 S. E., 589)

*Messrs. Carlisle, Brown & Carlisle* and *Sawyer & Sawyer,* for appellant.

*Messrs. Barron, Barron & Walker* and *John K. Hamblin,* for respondent,

January 13, 1936.

The opinion of the Court was delivered by MR. G. DEWEY OXNER, ACTING ASSOCIATE JUSTICE.

A petition for a rehearing was granted in this case and same reargued.

This action was instituted for the purpose of recovering judgment against defendant under a total and permanent disability provision contained in a certain certificate of insurance issued to plaintiff under a group policy of insurance on the employees of Monarch Mills, Union, S. C. The defendant denied liability. The trial resulted in a verdict by the jury in favor of plaintiff for $468.00, the amount of disability benefits which he claimed. From judgment entered thereon defendant has appealed to this Court, and by its exceptions raises two questions, namely:

1. Was there sufficient testimony to go to the jury on the issue as to total and permanent disability of plaintiff during the coverage under the policy?

2. Did the Court err in permitting Dr. Maddox and other witnesses for plaintiff to testify as to the tubercular condition of plaintiff?

The rehearing of the case was sought and granted only upon the second question.

The Court, in its former opinion, in disposing of the first question, said:

"The motion for a nonsuit was based upon the ground that the 'record fails to disclose evidence upon which a reasonable inference of total and permanent disability could be based during the coverage under the group policy.' In refusing the motion, his Honor, the trial Judge, states: 'I think there is testimony here by this witness that, although he (the plaintiff) attempted at Spartanburg and Union here to weave (which seems to have been his ordinary work), he was unable to weave without calling in help, and, under

the decisions of this Court, to be able to go about his ordinary work in his customary manner.  *  *  *'

"In our opinion the record supports the ruling of the trial Judge. There was testimony tending to show that the plaintiff was very unwell and unable to carry on his ordinary work in his customary way. There was also testimony from which it might reasonably be inferred that plaintiff's impaired physical condition at that time was total and permanent; that is, that he would not, in all probability, again be able to carry on his ordinary work in his customary manner. Whether this testimony was true we do not know, but, under the well recognized rule, it was the duty of the trial Judge to leave it to the jury to say what force and effect should be given it."

There remains for consideration, therefore, only the second question.

In October, 1931, plaintiff filed a claim with defendant for total and permanent disability benefits on forms furnished by the company. On the form completed by the plaintiff, among others, the following question and answer appears: "If not confined to house, why are you unable to work? Rheumatism and debility." Attached to this was a form to be completed by claimant's attending physician. This was completed by Dr. Maddox. The fifth question and answer on this form is as follows: "(a) State the present nature of this injury or sickness. (a)———. (b) Give your diagnosis as finally made. (b) Gastritis, chronic; arthritis, genl; Endodarditis, chronic; Anemia, sec.; Varicocele, bilateral; Hemorrhoids; Blood Pressure, C-100; Myocarditis." Thereafter, in November, 1931, a physical examination of plaintiff was made by Dr. McElroy for the insurance company. Subsequently the company denied liability. The action was commenced in June, 1932. The plaintiff alleged in his complaint that in August, 1931, he became totally and permanently disabled within the terms of said policy, gave due notice thereof to the company, and furnished it with due proof thereof and with a certificate of

a physician showing he was totally and permanently disabled; that the company refused to pay same, and denied all liability. There is no allegation in the complaint as to the causes of plaintiff's alleged disability. In its answer defendant admitted it had declined to pay said claim, denied that plaintiff had furnished it with due proof of total and permanent disability, and denied that plaintiff became totally and permanently disabled.

In his direct examination by counsel for plaintiff, Dr. Maddox testified that he examined plaintiff in August, 1931, and that "he had a chronic gastritis, arthritis-general, myocarditis, hypertension, hemorrhoids, varicocele bilateral, arthritis multiple, chronic anemia." After further testifying that from these causes plaintiff was totally and permanently disabled, counsel for plaintiff asked him whether or not in his examination he discovered any bronchial or lung trouble of any kind. This was objected to by counsel for defendant on the ground that defendant had no previous notice of such claim, and that this disease was not included in the proof filed. After considerable argument, the Court made the following ruling: "I will let the testimony go in now. Of course, I may decide later to have it stricken out if I should decide you are correct in your motion." Dr. Maddox then testified that plaintiff had a "tubercular focus in his lungs arrested," and that humidity and lint in the mill would not have any effect on that condition. Plaintiff's counsel pursued the matter no further than this. On cross examination he stated: "*  *  * It was an arrested type. *I didn't see that had anything to do with his condition. I don't consider it.*" He further testified on cross examination: "He has a focus there, an arrested lesion, it is not very large; *75 per cent. of us have them,* unless it becomes active." After further lengthy cross examination by counsel for defendant, he testified: "Yes, there is no rales in an arrested case. *I don't think the tuberculosis had anything to do with his present condition.* The only thing, if he should get down in such a condition that it would liberate that, then, of

course, it would become active tuberculosis; on the other hand, in an arrested case like that, it is like a vaccination for small-pox, it prevents tuberculosis. You take a person with a place on his lungs, if he runs down it will protect him, and he will never have tuberculosis; if it develops from that in two years he would die."

In consideration of the alleged error in the admissibility of this testimony, three questions arise: (1) Was the testimony competent? (2) If incompetent, was it prejudicial? (3) Did the Court make a final ruling on the admissibility of this testimony? These will be discussed in the order stated.

Appellant contends that, Dr. Maddox having set out in his certificate various diseases from which respondent was suffering and respondent having alleged in his complaint that "due proof of disability" had been furnished appellant, in the absence of an amendment or further notice to the appellant, respondent, on the trial of the case, is confined in proof of disability to the diseases enumerated in the proof of claim. Otherwise, appellant urges, the intent and purpose of proof of claim required under the terms of the policy would be defeated, and insured would be permitted, on the trial of the case, to take the company by surprise; and the company would not have that forewarning and opportunity for investigation which proper proof of claim would allow.

The policy required claimant to furnish "due proof" of total and permanent disability. "Due proof of a claim of loss under a policy means such a statement of facts, reasonably verified, as, if established in Court, would *prima facie* require payment of the claim, and does not mean some particular form of proof which the insurer arbitrarily demands; *nor does the statement of one adequate fact in the proofs exclude others omitted through mistake or ignorance."* Cyc. of Insurance Law, Couch, Vol. 7, § 1540. (Italics ours.) "Due proof" does not necessarily include medical proof. *Carson v. New York Life Ins. Co.,* 162 Minn., 458, 203 N.

W., 209, 210; Cyc. of Insurance, Couch, Vol. 7, § 1537. However, conceding, for the purpose of this case, that the certificate of Dr. Maddox, furnished at the request of the company, constituted an indispensable part of the proof of respondent's claim, nevertheless the statements therein contained are not conclusive upon claimant.

It is now well settled by the great weight of authority that statements made in proofs of loss, injury, disability, etc., are not conclusive upon the claimant, at least where no estoppel is involved, and where there is no intent or attempt to defraud the insurer. The statements may be explained, qualified, or corrected, and it may be shown that they were the result of inadvertence, mistake, or misinformation. We shall only undertake to review a few of these authorities. For a full review, see annotation in 93 A. L. R., 1342.

In *Supreme Lodge, K. of P., v. Beck,* 181 U. S., 49, 21 S. Ct., 532, 534, 45 L. Ed., 741, the beneficiary, in filing proof of death, stated that death resulted from suicide, which the policy did not cover. On trial she was permitted to show death resulted from other causes. The Court said: "None of the elements of estoppel enter into the declaration. The condition of the defendant was not changed by it, and if under a misapprehension of facts she made a statement which was not in fact true, she could explain the circumstances under which she made the statement and introduce testimony to establish the truth."

In *Union Mutual Aid Ass'n v. Carroway,* 201 Ala., 414, 78 So., 792, 793, the Court used the following language: "On the trial the plaintiff in such a case is not estopped to show that the misstatement in the proof as to the nature or cause of his illness was the result of mistake or ignorance, or was made under a misapprehension of the facts; that is, in the absence of facts creating an estoppel, as that the assurer has changed its position to its detriment in reliance on the statement of facts contained in the proofs furnished by

the plaintiff, the assured may show the truth, and that the erroneous statement thereof contained in the proofs was the result of ignorance, mistake, or misapprehension of the true facts."

The following language was used by the Court in the case of *Wallin v. Massachusetts Bonding & Ins. Co.,* 152 Wash., 272, 277 P., 999, 1002: "The beneficiary under an accident insurance policy may explain, qualify, or correct the original proofs of loss, 'in the absence of facts creating an estoppel,' not only five days before the trial of her action, *but by evidence during the trial."* (Italics ours.)

The case of *Southern States Life Ins. Co. v. Warnock,* 145 Ga., 791, 89 S. E., 843, is very similar to the case at bar. The action was founded upon a total and permanent disability provision contained in a life policy. The proof submitted showed disability "by reason of kidney trouble and cataracts on both eyes." On trial claimant was permitted to show disability resulting from other causes.

Any other rule might result in great injustice to the claimant in cases of this kind. Reputable physicians frequently disagree as to the causes of disability, and in some cases the attending physician may be unable to diagnose the case. Frequently additional causes of disability may be discovered after proof of claim has been filed.

We think it is clear that respondent is not concluded by the statements contained in the certificate of Dr. Maddox. The next question which arises is: Having concluded that the claimant is not bound by the statements made by Dr. Maddox in filing proof of claim, if he desired to show other infirmities or diseases, was it necessary to file an amended proof of claim or otherwise give notice to the company that he claimed other causes of disability?

As hereinabove stated, shortly after respondent filed his proof of disability, the company had its own physician, Dr. McElroy, make a physical examination of respondent. As a witness for appellant, he testified that he examined claim-

ant and found his lungs "normal," and that in his opinion respondent was not totally disabled. After this examination appellant denied liability. If, after filing his proof of disability, respondent or his physician had discovered that they had made a mistake in not including tuberculosis among the many diseases from which respondent was suffering, it would have been futile to have filed an amended proof of disability, for the company had declined to act on the proof already filed, made its own independent investigation through its physician, including an examination of respondent's lungs, and denied liability. As stated by the Court in *Hardie v. Metropolitan Life Ins. Co.* (Mo. App.), 7 S. W. (2d), 746, 748: "It would have been idle for plaintiff then to have done more by way of furnishing proof. The insurance company, in effect, said to plaintiff: 'We have used our own method of finding the proof as to your disability. Our method shows that you are not disabled, and the matter is closed; we will not pay.' "

"The object of the proofs is to furnish the company with the particulars of the loss and all data necessary to determine its liability and the amount thereof." 33 C. J., 17. Assuming, without deciding, that ordinarily due proof of disability requires a statement by a physician of the causes thereof, and that if claimant desires to show other causes of disability he must file amended proofs or otherwise give notice thereof to the company, nevertheless, in the case at bar, the whole purpose of the proof of disability had been served by the independent examination by the company's physician. Any amended proof or other notice was unnecessary and was waived by appellant.

In *Pagni v. New York Life Ins. Co.*, 173 Wash., 322, 23 P. (2d), 6, 10, 93 A. L. R., 1325, the Court said: "Where the denial of liability on the part of an insurance company is of such a character or made under such circumstances as reasonably to induce a belief that the submission of further proofs will be useless, a waiver of defects in or insufficiency

of the proofs furnished and a waiver of the requirement to furnish additional proof will be effected."

We find the following language in *John Hancock Mutual Life Ins. Co. v. Cave,* 240 Ky., 56, 40 S. W. (2d), 1004, 1005, 79 A. L. R., 848: "The point is made that the proof of disability furnished the insurance company was insufficient to establish the fact. As we have seen already, there was evidence of the fact sufficient to sustain the finding of the jury to that effect, and it is unnecessary to determine the sufficiency of the proof originally submitted to the insurance company. It denied all liability, and did not call for further proof concerning the condition of the insured. In such cases, it is immaterial to inquire into the subordinate question, when the main issue is under investigation."

The foundation of respondent's claim was alleged total and permanent disability. Any effort on the part of the respondent to show tuberculosis as a cause of his disability did not have the effect of making a new claim, but supplied additional facts, in support of the old claim. *Jarvis v. Northwestern Mutual Relief Ass'n,* 102 Wis., 546, 78 N. W., 1089, 72 Am. St. Rep., 895.

The complaint alleged generally that respondent was totally and permanently disabled within the meaning and terms of the policy. There was no motion to make the complaint more definite and certain in that regard. If, from these allegations, appellant was not sufficiently advised as to the nature of the claim as to enable it to properly defend, it did not avail itself of the remedy afforded by the Code. In speaking of a complaint similarly drawn, the Court, in *Rickey v. New York Life Ins. Co.* (Mo. App.), 71 S. W. (2d), 88, 89, said: "As will be seen from the foregoing excerpt, the petition pleaded plaintiff's loss in the language of the policy itself. Defendant did not file a motion to require plaintiff to make the petition more definite and certain. We think the petition sufficiently charges ultimate issuable facts to show a loss within the terms of the policy."

We conclude that the testimony offered was competent.

In view of the foregoing conclusion, it becomes unnecessary to pass upon the questions as to whether such testimony, if incompetent, was prejudicial and whether the Court made a final ruling.

It is the judgment of this Court that the judgment of the Circuit Court be, and the same is hereby, affirmed.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE CARTER concur.

MR. JUSTICE BONHAM (concurring in result) : I regret the question whether the Court on trial of the case made a final ruling on the contested question relating to tuberculosis. It is a question which constantly arises in the trial of cases and ought to be definitely decided. In the present case I think the ruling of the Circuit Judge was final.