[Nos. 34566, 34649. *En Banc.* April 9, 1959.]

RUTH THOMA, *as Administratrix, Respondent,* v. C. J. MONTAG & SONS, INC., *et al, Appellants.*

RUTH THOMA, *as Administratrix, Appellant,* v. C. J. MONTAG & SONS, INC., *et al., Respondents.*[1]

[1] Reported in 337 P. (2d) 1052.

*Minnick & Hahner* and *Vaughn E. Evans*, for appellants and respondents Montag & Sons.

*Critchlow & Williams, Minnick & Hahner* and *Vaughn E. Evans*, for respondent and appellant Thoma.

*Nickell, Fitch, Stinnette & McAteer, William S. Stinnette, Holman, Mickelwait, Marion, Black & Perkins, Fred S. Merritt, Richard E. Williams,* and *Grant Armstrong, amici curiae.*

FOSTER, J.—Plaintiff sued C. J. Montag & Sons, Inc., a Washington corporation; Carl M. Halvorsen, Inc., an Oregon corporation; McLaughlin, Inc., a Montana corporation; Austin Construction Company, a Washington corporation; and Babler Brothers, Inc., an Oregon corporation, all do-

ing business as Montag, Halvorsen, Austin and Associates, a joint venture, for wrongful death.

Plaintiff alleged that she was the duly appointed, qualified and acting administratrix of the estate of her deceased husband. Plaintiff appeals from an order abating the action. Defendants separately appeal from a denial of their motion for summary judgment. All parties have stipulated for consolidation here, and, for simplification, they are referred to as plaintiff and defendants.

The complaint contains a well-pleaded cause of action for death by wrongful act, and specifically alleges that the deceased, at the time of the fatal accident, was not in the course of his employment nor performing any duty for the defendants, was not under their control, and was not receiving compensation.[2] This was the only pleading before the court at the time of the entry of the order abating the action. All of the defendants jointly moved for summary judgment, which motion was supported by affidavits containing extracts and portions of the record of the department of labor and industries. That motion contained, in the alternative, a separate plea in abatement. The action was abated October 17, 1957. On the same day, the defendants filed an answer containing an affirmative defense setting out the filing and allowance of the industrial insurance claim to which the plaintiff had had no opportunity to reply when the action was abated.

■ If pleaded by the plaintiff in her reply, the following matters, appearing from the showing on the motion, would raise an issue of constructive fraud:

Ruth Thoma, for herself individually, filed a claim for a widow's pension under the industrial insurance act.

The widow's claim was allowed and warrants mailed her within a month after her husband's death on March 29, 1957.

---

[2] "On March 29, 1957, at or about 7:40 p. m., FRANK C. THOMA was eating his lunch near a 'haul road' at the site of the above-mentioned construction. At that time and place, FRANK C. THOMA was not performing the duties called for by his contract of employment with defendants, was not under or subject to defendants' control, and was not receiving compensation from defendants."

The unverified claim of the widow was filed April 3, 1957, although the form employed contains the usual verification clause. The circumstances under which the widow was impelled to sign the claim or who filled it out are undisclosed, but she was then unaware of her rights. It appears beyond peradventure that, upon being advised by her own counsel, she withdrew her claim and promptly instituted the present action.

An interoffice communication dated April 12, 1957, from the district supervisor of the department of labor and industries to the supervisor of claims, omitting the formal portions, is as follows:

"In reference to your assignment of April 5, 1957, we have contacted Dick Kimball who represents the employer, and Ray Sutherland who is business representative for Laborers Local number 348, Pasco, Washington, and their answers to the questions that you raised in your assignment are next attached.

"Also, please find attached, labor agreement which was in effect at the time of the fatal accident. As far as can be determined, these are true facts. If any further information is desired, please advise."

The answer of the representative of the employer is not set out, nor is that of the business representative of the labor union involved. There is a longhand memorandum attached from someone in the industrial insurance division, which, omitting formal parts, is as follows:

"This is a close one but I believe that it should be allowed. I would suggest however that B. Johnsons opinion should be obtained before our action is taken."

Another interoffice communication is as follows:

"DEPARTMENT OF LABOR AND INDUSTRIES
INTEROFFICE COMMUNICATION

"To:      R. J. McLean          Date:  April 17, 1957
From:    Bernard A. Johnson
Subject: Frank H. Thoma (Dec'd)  Office:  Olympia
         C-405208-3

"A review has been made of the subject claim file regarding the claim for a widow's pension by Ruth L. Thoma, surviving spouse of the deceased workman.

"It appears clear from the statements of Dick Kimball, Safety Engineer, and Ray Sutherland, Business Representative, Laborers Local No. 348, that under the labor agreement, the workmen are paid for their lunch period and this fact would render such workmen in the course and scope of their employment for the entire working shift.

"It is, therefore, recommended that the claim for a widow's pension be allowed. The file is returned herewith.

"Very truly yours,

Bernard A. Johnson. [s]
BERNARD A. JOHNSON

"BAJ: J          Legal Division."

There is a very substantial conflict in the conclusions in this informal memorandum with our noon-hour cases, *D'Amico v. Conguista,* 24 Wn. (2d) 674, 167 P. (2d) 157; and *Young v. Department of Labor & Industries,* 200 Wash. 138, 93 P. (2d) 337, 123 A. L. R. 1171.

Eighteen days after the death the widow's claim was allowed, and on April 24, 1957, warrants were mailed to her covering the initial industrial insurance benefits. Thereafter, upon being advised of the institution of this action, the department of labor and industries suspended the allowance of the claim by order dated May 6, 1957, which order, omitting formal parts, is as follows:

"WHEREAS this claim was allowed and approved for payment by order dated April 17, 1957 and

"WHEREAS the surviving widow is alleging that the deceased was not in the course of employment at the time of his death and that his death was due to wrongful neglect and, therefore, is instituting civil action for recovery;

"IT IS THEREFORE ORDERED that the aforesaid order be held in abeyance pending the decision of the court."

Such order was within the sixty days allowed by law for the taking of an appeal.

The action was abated without evidence and without opportunity on the part of the plaintiff to present the facts. ■ Such matters if pleaded by the plaintiff in reply, as is her right, would raise an issue of fact in addition to the issue of law. The facts urged in support of the special plea in abatement can be brought before the court only by

answer, and the only manner in which issue may be joined is by reply.

RCW 4.32.210 is as follows:

"When the answer contains new matter, constituting a defense or counterclaim, the plaintiff may reply to such new matter, denying generally or specifically each ·allegation controverted by him, or any knowledge or information thereof sufficient to form a belief; and he may allege in ordinary and concise language, without repetition, any new matter not inconsistent with the complaint, constituting a defense to such new matter in the answer."

■ Common-law pleading never existed in the territory of Washington. It was abolished by the first territorial legislature. Laws of 1854, chapter 5, § 36, p. 138; Rem. Rev. Stat., § 255; RCW 4.32.010. The separate plea in abatement does not and never did exist in Washington. *Wallin v. Massachusetts Bonding & Ins. Co.*, 152 Wash. 272, 277 Pac. 999. Such matters must be raised by answer. *Wallin v. Massachusetts Bonding & Ins. Co., supra.*

■ Under the Field code, which is the only form of pleading ever known in either the territory or the state of Washington, the only pleadings upon the part of a defendant are (1) the demurrer, and (2) the answer. RCW 4.32.020; Laws of 1854, § 37, p. 139.

RCW 4.32.080 (Laws of 1854, § 44, p. 139) provides that the answer must contain (1) a general or specific denial, and (2) a statement of any new matter constituting a defense or counterclaim.

Judge Clark (Clark on Code Pleading (2d ed.), pp. 601-603) declares that the common-law plea in abatement was abolished by the Field code and survives in only two code states, Connecticut and Indiana. Such is the substance of our decision in *Wallin v. Massachusetts Bonding & Ins. Co., supra.*

■ ■ Defendants moved for summary judgment, and both parties filed affidavits concerning their respective contentions. The summary judgment procedure authorizes a speaking motion for the purpose of such motion only. Rule of Pleading, Practice and Procedure 19, 34A Wn. (2d) 81,

as amended, effective November 1, 1955. Otherwise, our procedure abhors speaking motions and demurrers. Defects not appearing upon the face of a pleading may not be raised by motion or demurrer but must be pleaded by answer or reply according to the circumstance. Affidavits in support of, or in opposition to, a plea in abatement are unauthorized.

■ The summary judgment device may not be used to try a question of fact but is limited to those instances in which there is no genuine dispute of fact. Moore declares:

"The function of the summary judgment is to avoid a useless trial; and a trial is not only not useless but absolutely necessary where there is a genuine issue as to any material fact. In ruling on a motion for summary judgment the court's function is to determine whether such a genuine issue exists, not to resolve any existing factual issues. . . . " 6 Moore's Fed. Practice (2d ed.) 2101, § 56.15 (1).

See, also, *Fountain v. Filson,* 336 U. S. 681, 93 L. Ed. 971, 69 S. Ct. 754; *Associated Press v. United States,* 326 U. S. 1, 89 L. Ed. 2013, 65 S. Ct. 1416; *Sartor v. Arkansas Natural Gas Corp.,* 321 U. S. 620, 88 L. Ed. 967, 64 S. Ct. 724.

■ The fact that the plaintiff was unaware of her rights at the time of signing the claim, which she promptly withdrew upon being advised by her own counsel, indicates the existence of an issue of fact.

The court was correct, therefore, in denying the defendants' motion for summary judgment. The court erred in abating the action. We do not reach the merits of the controversy.

The order denying defendants' motion for summary judgment is affirmed. The judgment abating the action is reversed on plaintiff's appeal and the cause remanded with instructions to proceed in accordance with the views expressed herein. Plaintiff is to recover costs.

WEAVER, C. J., FINLEY, ROSELLINI, and HUNTER, JJ., concur.

HILL, J., concurs in the result.

Donworth, J. (dissenting)—I dissent. The majority have injected into the case an issue of fact (constructive fraud) which is wholly foreign to the pleadings and for which there is no foundation in the record. This theory has never been urged, nor even recognized, by either plaintiff or defendants. By so doing, the majority *sua sponte* have avoided any discussion of the principal issues presented on this appeal.

The majority opinion says:

"If pleaded by the plaintiff in her reply, the following matters, *appearing from the showing on the motion,* would raise an issue of constructive fraud." (Italics mine.)

The matters thereafter related are facts brought before the trial judge by *defendants* in their affidavit in support of their alternative motions for abatement or dismissal. Collectively, these facts show nothing more than that plaintiff was awarded the widow's pension (under the workmen's compensation act) with reasonable promptness after she had applied for it. By counsel, she thereafter attempted to disclaim her right to take under the act and returned previously drawn pension warrants. The supervisor of industrial insurance, at the request of plaintiff's counsel, entered an order purporting to suspend the operation of his prior order and to hold plaintiff's claim in "abeyance" while she prosecuted this action in the superior court.

Wherein does the fraud lie? We are not told. But, apparently, it arises from the prompt, expeditious processing of plaintiff's claim by the supervisor of industrial insurance. If that be fraud, then it is certainly a type of fraud which the legislature has encouraged.

Prompt disposition of workmen's compensation claims was one of the fundamental objectives which our legislature sought to obtain in 1911, when, in adopting the workmen's compensation act, it said:

"The common law system governing the remedy of workmen against employers for injuries received in hazardous work is inconsistent with modern industrial conditions. . . . The remedy of the workman has been uncertain,

*slow* and inadequate. . . ." (Italics mine.) Laws of 1911, chapter 74, § 1, p. 345 (RCW 51.04.010).

Furthermore, this court has heretofore recognized this fact by stating that the act was adopted "in order that the delay and frequent injustice incident to civil trials might be avoided" (*State v. Mountain Tbr. Co.*, 75 Wash. 581, 135 Pac. 645 (1913), L. R. A. 1917D, 10) and to "*afford* a remedy to the workmen that would be *certain, expeditious,* and *adequate*" (*State ex rel. Crabb v. Olinger,* 196 Wash. 308, 82 P. (2d) 865 (1938)). The majority, by calling the supervisor's allowance of plaintiff's claim constructively fraudulent, implicitly sanctions the opposite type of administrative action, thereby imposing a penalty for promptness and efficiency and putting a premium on procrastination and inefficiency.

Next, assuming that such fraud is present, plaintiff has had *two* opportunities to raise such an issue, but has not done so. First, all matters related by the majority were brought before the trial court by *defendants* in their affidavit in support of their alternative motions for summary judgment of dismissal or for an order of abatement. Plaintiff filed an affidavit in opposition to the motion, but did not claim fraud. Second, on November 8, 1957 (twenty-two days after the order abating this action was entered), plaintiff *did file her reply* to defendants' affirmative defenses, generally denying them, but raising no issue of fraud.

Furthermore, subsequent to the departmental hearing of this case and preliminary to the reargument *en banc,* plaintiff answered certain questions propounded by the court, as follows:

"QUESTION SIX—'Does the fact that the supervisor processed the widow's claim promptly and awarded her a pension deprive him of jurisdiction to decide the issue [whether or not deceased was in the course of his employment at the time of his death] referred to in the preceding question?'

"ANSWER FROM PLAINTIFF—Plaintiff would answer the above question in the negative.

"QUESTION SEVEN—'Does the fact that the widow filed her claim with the Department of Labor & Industries before

consulting counsel deprive the supervisor of jurisdiction to process her claim and award her a pension?'

"ANSWER FROM PLAINTIFF—Plaintiff would answer the above question in the negative."

It would, therefore, seem that plaintiff has specifically disavowed any claim of fraud in this case.

Since there is neither allegation nor proof in this entire record that any of the defendants ever contacted plaintiff subsequent to her husband's death, the "constructive fraud" suggested by the majority could only have been perpetrated by the supervisor of industrial insurance. He is not a party to this suit, yet the majority tacitly approve this collateral attack upon his order allowing plaintiff the widow's pension for which she applied. The supervisor's order, if fraudulent, can only be attacked directly, not collaterally.

The issue of fraud raised by the majority renders any discussion of the merits of either of defendants' alternative motions unnecessary. Although the majority have commented upon defendants' plea in abatement, I find it unnecessary to do so.

I would eliminate from the case the court-created issue of constructive fraud and proceed to a determination of the merits of the only issues raised by the parties and supported by the record. As I view the case, this is the only course which can result in a final determination of the questions presented by this lawsuit.

MALLERY and OTT, JJ., concur with DONWORTH, J.