## WALLACE v. STANDARD ACC. INS. CO. OF DETROIT, MICH.

### No. 6128.

Circuit Court of Appeals, Sixth Circuit.

Feb. 17, 1933.

Clyde L. Miller, of Ashland, Ky. (Vinson & Miller, of Ashland, Ky., on the brief), for appellant.

F. C. Malin, of Ashland, Ky. (Howard Van Antwerp, Jr., of Ashland, Ky., on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

This suit was upon a policy of accident insurance issued on behalf of Frank T. G. Wallace, Jr., who died while the policy was in force. Appellant challenges the correctness of a directed verdict in favor of appellee.

The question is, whether there was substantial evidence that the insured lost his life, directly and independently of all other causes, from bodily injuries resulting solely from external, violent, and accidental means.

For many years before, and until, his death, the insured had been a sufferer from diabetes mellitus and had taken with more or less regularity the insulin treatment therefor under the directions of physicians. At the time of his death he was fifty-four years of age and weighed about one hundred and seventy pounds. He was subject occasionally to attacks of dizziness and fainting spells.

He resided with his family in Gartrell Hill Subdivision of Ashland, Ky. About 11 o'clock on the night of his death, September 19, 1927, the insured in company with his son had driven an automobile from the business section of Ashland, a distance of two or three miles, to his home. They placed the car in a garage about thirteen hundred feet from the entrance of the house and walked that distance up a street, having an average grade of 6 per cent. The insured's automobile was found at the entrance and the son started to take it to the garage. The insured turned toward the house and in so doing ascended a flight of twelve wooden steps making a rise of seven feet to the yard. This flight had a wooden handrail on the right. The distance from the top of the wooden steps to some concrete steps leading up to the porch was eighteen feet. The house was new and there was no walk between the two sets of steps. At the top of these wooden steps there was an opening of three or four inches that had not been filled in.

When the insured reached the top of the wooden steps, he called, "Come here son, I'm hurt." The son went to him immediately and inquired, "What's the matter, father?" and the insured answered, "I don't know, son." He was found about three or four feet to the right of the top of the wooden steps; one foot was off the ground, one knee was on the ground, and one hand on the ground, as if he were attempting to rise. The son helped him to his feet and with his assistance insured walked across the yard, up the concrete steps, across the porch, to the front door, where he slumped down. After being assisted into the house he fell to the floor and died in about forty-five minutes without speaking again or regaining consciousness.

There was a wound in the nature of an abrasion over insured's left temple from which blood was flowing. The left cheek was skinned or scraped, and there was a skinned

place upon his chin. There was grass and dirt on his face. There was a bruised place under the left knee but there were no fractured bones.

On a line with the handrail of the wooden steps and about twelve or fifteen inches from the top step was the stump of a tree. The witnesses vary in their testimony touching the diameter of this stump. One witness thinks that it was perhaps nine or ten inches in diameter, while another testifies to a diameter of from four to six inches. There is evidence tending to show that it was half rotten and there is also evidence tending to show that it was solid. It was three or four inches higher than the level of the ground around it. The tree had been cut with an axe and the point of the stump was toward the wooden steps. When the insured was found he was lying at a slight angle from the right top corner of the wooden steps and his feet were two and a half or three feet from and on the right side of the stump. Grass had grown up around the stump, and an examination made about daylight of the morning after the insured's death showed that grass had been pulled up over the top of it and had the appearance of having been mashed but the record does not disclose in what direction the grass had been pulled. Several witnesses testified that they came to the insured's house in the night, after his death, and that they did not stumble over the stump but all those who came did not so testify; nor is there any evidence touching the prior condition of the stump, i. e., whether it had grass mashed upon it before the accident.

Some time after the insured was taken into the house his cane was found eleven or twelve feet from the top of the wooden steps in the general direction, but to the left, of the concrete steps.

 There was medical testimony tending to show that the insured died as a result of cerebral hemorrhage superinduced by the fall or some damage to his skull caused by the fall, but we find no substantial evidence to support the essential allegation of the petition that the fall itself was caused by stumbling independently and exclusively of any and all other causes. There is no room for any presumption that it was so caused. This was purely a question of fact and the burden was upon appellant. The insured himself in his conscious moments stated that he did not know. No one saw the occurrence. The whole question is in the realm of conjecture, possibility, or surmise. Hardy-Burlingham Min. Co. v. Baker, 10 F.(2d) 277 (C. C. A.

6); Davlin v. Henry Ford & Son, Inc., 20 F.(2d) 317 (C. C. A. 6); American Oil Co. v. Frederick, 47 F.(2d) 54, 57 (C. C. A. 6).

The location of the cane is without special probative force. It may have been thrown by the violence of the fall from whatever cause or it may have been dropped by the insured on his way to the house after the fall or it may have been placed by some third person at the point where it was found. The wound upon insured's left temple militates against the theory that he stumbled upon the stump and fell to the right. The mashed grass upon the stump, in the absence of any evidence as to how long it had been in that condition, carries with it nothing more than a possible inference. American Oil Co. v. Frederick, supra. The shoes worn by insured were introduced, but their appearance disclosed nothing of probative value. The fall may have resulted from weakness incidental to the insured's physical condition or from overexertion due to the ascent of the street and steps or from some other cause. As stated in Atchison, T. & S. F. Ry. Co. v. Saxon, 284 U. S. 458, 52 S. Ct. 229, 230, 76 L. Ed. 397: "Nobody saw the accident; no one can say with fair certainty how it occurred. Consistently with the facts disclosed it might have happened in one of several ways. * * *" See, also, Chicago M. & St. P. Ry. Co. v. Coogan, 271 U. S. 472, 477, 46 S. Ct. 564, 70 L. Ed. 1041.

The judgment is affirmed.