## HICKMAN COUNTY v. NASHVILLE BRIDGE CO.
### No. 6262.

Circuit Court of Appeals, Sixth Circuit.
June 30, 1933.

HICKS, Circuit Judge, dissenting.

C. P. Hatcher, of Nashville, Tenn. (R. L. Peery, of Centerville, Tenn., and Pitts, McConnico & Hatcher, all of Nashville, Tenn., on the brief), for appellant.

A. H. Roberts, of Nashville, Tenn. (Roberts & Roberts, of Nashville, Tenn., on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

■ Objection is made by the appellee to a consideration of the questions argued on this appeal on the ground that the assignments of error are insufficient under rule 11 of this court. We think the assignments are too general, but it is within the province of the court to notice plain error not assigned (The Myrtle M. Ross, 160 F. 19, 22 (6 C. C. A.), and in view of the interests involved in the litigation we deem it appropriate to consider the questions presented on the face of the record, though the errors relating to them were not assigned with the particularity that is required.

On July 2, 1928, the county court of Hickman county, Tenn., in quarterly session, adopted two separate resolutions, one of which recited that there was urgent need for bridges in six different places in the county, and directed that there be issued eighty-five $1,000 interest-bearing county warrants to be sold and the proceeds applied to the erection of bridges at the designated places. The resolution further directed a levy of 10 cents on each $100 of property in the county to pay the warrants so issued. By the second resolution a committee was appointed to supervise the sale of the warrants and "to receive bids and to let contracts for the building and erection of said bridges, and the manner in which said contracts are to be let." Pursuant to the latter resolution the committee advertised for bids, and on September 22, 1928, contracted with the appellee to build two of the six bridges. The contract provided that one-third of the contract price was to be paid on completion of the foundations. Thereafter the appellee constructed the foundations for the two bridges, and upon the refusal of the county court to pay therefor brought this action against the county and recovered judgment for the amount the committee agreed to pay for the work.

In reaching the conclusion that the county was liable on the contract made by the committee the court determined: (1) That the county court had the power to delegate to a

committee the authority to make a contract binding upon the county for the construction of the bridges; and (2) if it was not in the power of the county court to delegate to the committee authority to make such a contract, the court had so approved and ratified the action of the committee as to make its contract the contract of the court.

It is admitted by both parties that the court has authority itself to enter into contracts to construct bridges. Greene County v. Tennessee Eastern Electric Co., 40 F.(2d) 184 (6 C. C. A.). Some controversy exists between them as to whether the authority is conferred by the Public Acts of the state of 1835 (Shannon's Code, §§ 1730 and 1731) or by the Acts of 1885 (Shannon's Code, § 1712). It is not important in this case whether it is derived from one or the other or both of these acts. The difference in the two statutes is that in the earlier one it is provided that the court shall appoint commissioners to receive proposals for the work, which proposals shall clearly specify the extent, character, and description of the same, and the commissioners shall report their proceedings to the ensuing term of court, which the court may receive and accept and shall thereupon "direct the work to progress under such regulations and securities as it may deem proper," whereas the later statute makes no provision for the appointment of a committee to receive bids and report back but merely vests in the county court the power to build bridges over and across any stream or river running through the county, to be located on or near and convenient to a public highway, due regard being had both to advantage of location and convenience of the citizens of the county.

As the earlier statute plainly contemplates contractual action by the court itself, and not by the committee which it may select or appoint, we assume for the purposes of this case that the court acted under what it thought was the authority conferred by the later statute. Proceeding upon this assumption, we are nevertheless unable to find any power given to the court to delegate to a committee its authority under this statute. By the terms of the statute the county court is empowered to build bridges. The vesting of this power in the court does not carry with it the right of delegation unless there is a state court construction of the statute which requires such implication. The appellant insists that the statute has been so construed. We find no state decision susceptible to that interpretation. Smiley v. Mayor and Alder-

men of Chattanooga, 6 Heisk. (Tenn.) 604, dealt with the admissibility of nonrecord evidence to prove the appointment of an agent, going no further in respect to the authority of the agent than stating the general rule that such authority might be implied from the adoption or recognition of his acts by the corporation or its directors. The question of the right of the municipality to delegate the exercise of its judgment and discretion in contradistinction to a ministerial function was not considered in that case. Nor was the question decided in Sullivan County v. Ruth & Co., 106 Tenn. 85, 59 S. W. 138, for there the contract was made with the authorized agents of the county, and the committee was to see that it was executed according to specifications. It was sufficient for the decision in Beck v. Puckett, 2 Shannon (Tenn.) 490, that there was a ratification of the contract by the county court. The dictum in the opinion in that case dealing with the delegation of the corporate powers of a county is obviously nullified by the later decisions of the state court holding that the powers conferred upon a county are limited by the statutes conferring them, which statutes must be strictly construed. Burnett v. Maloney, 97 Tenn. 697, 37 S. W. 689, 34 L. R. A. 541; Hagan v. Black, 159 Tenn. 290, 293, 17 S.W.(2d) 908. This has been the law of Tennessee since Nashville & K. Railway Co. v. Wilson County, 89 Tenn. 597, 601, 15 S. W. 446, where it was said: "The powers 'intrusted to' the county courts thus established emanate from the legislature alone; hence measure and limit of those powers are to be found in the statutes, and, when a power claimed for them is not conferred by some statute, it must be held not to exist."

The general rule is that where the governing body of a county or municipality is given authority to exercise corporate powers, such powers are not susceptible of delegation. See authorities cited in Ohio County, Ky., v. Baird, 181 F. 49, 54 (6 C. C. A.); Lotspeich v. Mayor and Aldermen of Morristown, 141 Tenn. 113, 119, 207 S. W. 719. Were it otherwise, responsibility for the exercise of the power by the authority to which it was confided would be evaded. The governing authorities of a county, it is true, can delegate to a committee the duty of performing ministerial acts in carrying out the details of a contract. That was what was done in Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659. In that case the city determined by ordinance that the streets should be paved with some one of a number of designated materials, and all

that the council did was to delegate its ministerial work to agents operating within the details of the contract which it had made. Here the powers delegated to the committee were broad enough to permit it to determine whether the bridges should be built of steel, concrete, or other material without restriction as to height, width, or separate costs. All of these matters involved the exercise of a discretion and judgment confided to the court alone. The power to delegate the exercise of this discretion and judgment is not given in the statute. There is a statute of the state which gives the county court the power to appoint commissioners who shall be authorized to contract for repairs to bridges, levees, or causeways. Shannon's Code, § 1738. The necessity for prompt repairs to such structures and the inconvenience that might be occasioned by requiring the contracts to be made by the county court may have been deemed a sufficient reason for the granting of this power. In any view, the existence of this statute indicates that the failure to grant a like power to the county court for original construction was not inadvertent.

The claim that the contract is valid because ratified by the county is based, among other things, on two motions made by members of the court to reconsider and to amend the resolution of July 2d. Both of these motions were made and failed of passage before the contract was signed. Events occurring before the contract was signed obviously cannot be accepted as a ratification. Neither in our view did the action of the county judge on October 12th in declining to entertain a motion to reject or repudiate the contract amount to a ratification. It would, of course, have been evidence of fair dealing if this motion had been submitted and voted upon. Prior thereto, however, on October 2d, a motion to adopt the report of the committee had been made and rejected by the court. Thus as the court had already refused to ratify the contract, it would seem to have been unnecessary to put the later motion and to have a vote taken again. Another incident said to amount to ratification was the payment of the committee's bills for advertising for bids. This could amount to nothing more than a ratifi-

cation of the committee's ministerial act of advertising. Having authorized that act, the county was bound to pay the bill, and besides, the court could very well agree to pay the bill for advertising for bids without ratifying the acceptance of a bid by the committee.

Other acts and incidents relied upon as ratification are equally ineffectual. The levying of the tax in the resolution of July 2d was before the contract was signed, and the levy was never carried out. The failure of the clerk of the county to return to the appellee its bond executed at the time the contract was made with the committee was perhaps an oversight. All that the record shows on that point is that the secretary and treasurer of the appellee requested the clerk to return the bond and that it was not returned. It does not appear that the clerk refused to return it or that he was ever directed by the court not to do so. It is true that the appellee did certain work on the bridges, but a large part of the amount for which it sued consists of expenses incurred in preparation for the work. These expenses were not incurred in the county or in the presence of the court, and before any work was done in the county the appellee had notice of the rejection by the court of the report of the committee embodying the proposed contract. This was notice to the appellee of the court's attitude towards the contract, and in this situation it cannot be said that there was ratification because the county did not take legal steps to prevent the appellee from proceeding on the contract.

It results from the foregoing that the judgment of the court is reversed, and the cause is remanded with direction to dismiss the bill.

HICKS, Circuit Judge (dissenting).

I think that the county court, having located the bridges and directed that they be built and having levied a tax to pay for them, in the discharge of its governmental functions, had the implied, if not express, power to appoint the committee and vest in it the authority incorporated in the resolution of July 2, 1928.