## NEW YORK LIFE INS. CO. v. ROUFOS.

### No. 6943.

Circuit Court of Appeals, Sixth Circuit.
May 5, 1936.

Thomas A. E. Weadock, of Detroit, Mich., for appellant.

C. A. Tsangadas, of Detroit, Mich., for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The insurer disputes its liability under the double indemnity clause of an insur-

ance policy issued upon the life of Fotoni A. Roufos, deceased, on February 27, 1922, and appeals from a judgment below on the ground that there was no substantial evidence as to the cause of death, and that the court erroneously placed upon it the burden of establishing disease as a contributing cause.

The double indemnity clause of the policy is in the usual form, imposing liability upon the insurer for:

"Double the face of this policy upon receipt of due proof that the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental causes * * *

"This double indemnity benefit will not apply if insured's death resulted from * * * physical or mental infirmity, or directly or indirectly from illness or disease of any kind."

The insured was at the time of his death a man of fifty, actively engaged in his hat-cleaning business. On December, 29, 1932, he had returned home at the usual hour and spent the evening visiting with his family and guests, apparently in good health and spirits. During the evening he had twice gone unassisted to the basement of his house, once to attend to his furnace and again to locate a gas leak. Some time after his guests had departed, he announced that he would attend to the furnace for the night, and left for the basement by way of the stairs which led thereto from the kitchen. A few seconds later the members of his family heard a bump, or successive bumps. He was found lying upon the basement floor at the foot of the stairs, and a physician who was summoned found a bleeding cut at the back of his head. Stethoscopic examination showed his chest condition fair, but a slow heart beat. He was given a stimulant and carried up to bed. That night he died.

A post mortem performed in the presence of three physicians, one a medical examiner for the insurer, disclosed a hemorrhage at the base of the brain and three fractures at the base of the skull. There was no diseased condition of the brain itself. The medical testimony was substantially in accord that the proximate and sole cause of death was traumatic cerebral hemorrhage resulting from a fracture of the skull. No one saw the accident, but this, of course, does not preclude reason-

able inference from established facts as to how it occurred.

The insurer produced evidence showing that in 1923, some nine years before his death, Roufos had suffered a stroke while on a train in Pennsylvania; that it resulted in partial paralysis of his right side; that he was for some time confined to his bed; and that he had made claim for disability benefits under the policy. There was evidence, however, both medical and lay, that he had partly, if not wholly, recovered. For a number of years he had been actively carrying on his business, had done gardening about his home, had attended to his furnace and carried out the ashes, and had done considerable painting and varnishing in his house.

The stairway down which Roufos is claimed to have fallen consists of four steps to a platform at grade, and then of six more at a right angle to the basement. The stairway itself is unlighted, but on the basement wall at the right of the lower series of steps and on a line with the second downward step is a switch, eighteen inches above which is a shelf upon which children's toys and odds and ends were kept. The evidence is that before Roufos descended the stairway on his last visit to the basement the shelf was in order, but that after he was found in the basement the contents of the shelf were scattered over the floor, and the light was out.

It is the theory of the insurer that the fall was not accidental, but the result of the insured's physical condition, either his original paralysis or a subsequent stroke to which the insured was predisposed; that, in any event, submission to the jury of an issue as to the efficient cause of the fall was permitting decision to be based upon conjecture, possibility, or surmise. It therefore moved for directed verdict, and the denial of its motion is its first grievance.

It is, of course, elementary that, in determining whether facts and inferences raise an issue to be decided by the jury, the evidence must be considered in the light most favorable to the plaintiff. Standard Oil Co. v. Noakes, 59 F.(2d) 897 (C.C.A.6). Likewise it is well settled that, where there are several equally permissible inferences, no one of them is sustained by substantial evidence. Davlin v. Henry Ford & Son, Inc., 20 F.(2d) 317 (C.C.A. 6); American Oil Co. v. Frederick, 47 F.

622

(2d) 54, 57 (C.C.A.6). It is, however, the theory of the plaintiff that the accident happened as the result of the insured reaching out into the dark for the inconveniently placed basement switch, miscalculating its distance from the step upon which he stood, and losing his balance. There is, we think, substantial if circumstantial evidence to support this theory in the dislodgement of the shelf and the scattering of its contents upon the floor. The inference suggested by the defendant that the fall was caused by disease is issuably met by proofs of the insured's previous activity and his apparent recovery from the effects of his earlier stroke, and the implication of a second paralytic stroke is negatived by the medical evidence as to the absence of any diseased condition of the brain disclosed at the autopsy other than that due to the skull fracture, and, as indicated, the court was obliged to view the evidence in the light most favorable to the plaintiff. Wallace v. Standard Accident Insurance Co., 63 F.(2d) 211 (C.C.A.6), is not in conflict with the views expressed. There the evidence as to the physical infirmity of the insured up to the time of his fall was uncontroverted, and the inference that the fall may have resulted from weakness incidental thereto, or from overexertion, was not met, and was as permissible as any other inference with respect to the cause of the accident.

■ The second grievance of the insurer is to the charge of the court, which shifted to it the burden of proving that the death was the result of some physical or mental disease. The court's instruction on this point was undoubtedly an erroneous statement of the law. We have in two recent cases (among others) given careful consideration to the requirements of proof under policy provisions such as here involved. New York Life Insurance Co. v. Ross (C.C.A.) 30 F.(2d) 80, 82; Harrison v. New York Life Insurance Co. (C.C.A.) 78 F.(2d) 421, 422, 423. The insured must bring himself within the provisions of the policy, and, where they condition recovery not merely upon death resulting from bodily injury through accidental means, but upon the absence of physical or mental infirmity as a contributing cause, both conditions must be established before liability results. The present policy provisions with respect to double indemnity are substantially identical with those ruled upon in the Harrison Case.

■■ Strangely, however, the assailed instruction, while objected to with exception preserved on the record, is not assigned as error. This, under rule 11 of this court, precludes our consideration of it as reversible error, except as it is within the province of the court in preventing a miscarriage of justice to note plain error not assigned. The Myrtle M. Ross, 160 F. 19, 22 (C.C.A.6); In re Morgan et al., 26 F. (2d) 183 (C.C.A.6). The failure to comply with the rule here lies, not in any lack of precision in assigning error on the point involved as in Hickman County v. Nashville Bridge Co., 66 F.(2d) 174 (C.C.A.6), but in want of any assignment whatsoever in respect to it. While there should not perhaps be implacable enforcement of purely procedural rules when justice requires that they be relaxed, yet uniformity in their application is a desideratum, except as need for exception be plain. The evidence that the insured was in good health prior to the accident is clear and convincing, and the infirmity by which it was challenged remote. In these circumstances the ends of justice do not, we think, so clearly demand the preservation for the appellant of the not too certain imprint of a formula upon the minds of a jury that to relieve it from the unfortunate effect of its own lapse we should compel the appellee to submit to a new trial.

Judgment affirmed.