GRIFFIN v. PRUDENTIAL INS. CO. OF AMERICA

No. 6507.  Decided January 25, 1943.  (133 P. 2d 333.)

564

See 29 Am. Jur., 1082, 1098; 32 C. J. S., Evidence, sec. 766.

*Van Cott, Riter & Farnsworth,* of Salt Lake City, for appellant.

*H. G. Metos* and *E. A. Rogers,* both of Salt Lake City, for respondent.

FAUST, District Judge.

This is an appeal from a judgment against the insurance company, the appellant herein, in favor of the beneficiary, the respondent herein, on the double indemnity provision of a life policy issued to Glen W. Griffin, the insured, who was a son of the respondent. The double indemnity provision of this policy became payable upon receipt of due proof of death as a result directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means—provided, however, that no accidental benefit should be paid if the death of insured resulted directly or indirectly from bodily or mental infirmity or disease in any form.

The principal question involved here is whether sufficient evidence was introduced by respondent to entitle her to

recover under the double indemnity provision of the policy. It was admitted that the face value of the life policy had been paid in full.

Glen W. Griffin, the insured, had been surrendered by his bondsman on the afternoon of May 17, 1940, and incarcerated in the Salt Lake City jail for some offense which he had committed. There was some testimony to the effect that insured was a frail man and had been ill at home for about three days prior to his incarceration in the city jail. When he was brought to the city jail he appeared ill and weak. In the evening of the same day he was placed in a cell which was approximately 4½ feet wide by 8 feet long, and which contained bunks fastened to the wall running lengthwise of the room. These bunks were supplied with mattresses and bedding. The only other article in the room was a toilet, which in the insured's cell was placed in the northeast corner. The lower bunk was approximately 2½ to 3 feet from an uncovered cement floor. The cell in which Griffin was placed was one of a tier of four and opened into a runway. None of the cells were locked and the runway and all the cells were accessible to all the inmates at all times.

About an hour before the injury occurred the insured was seen by one of the inmates sitting on the lower bunk holding his head in his hands. This same inmate was sitting close to Griffin's cell in the runway reading a book when he was startled by a thud. He immediately entered Griffin's cell and found him lying on his back on the floor with his head close to the toilet. Griffin was bleeding profusely, the blood seeming to come from the back of his head. He appeared dazed and semi-conscious. He could not talk coherently. Some first aid was attempted by the inmates and the jailer was called. He attempted to administer a sedative which is sometimes given to sufferers of epileptic seizures. Griffin was in a dazed condition and would make attempts to get up and would fall down unless restrained so he was placed in the runway on a mattress to prevent further falls from the bunk. There was some testimony that he may have

fallen several times during the night. No doctor was called to examine the insured until ten o'clock the next morning. At that time he was unconscious. The doctor ordered him to be taken to the County Hospital and he died there later in the day.

Dr. C. R. Openshaw, the city's physician who attended insured, stated the cause of death in the death certificate to be basal skull fracture due to a fall while in an epileptic attack.

A post mortem which was performed by this doctor the afternoon of insured's death revealed that the cause of his death was a basal skull fracture, and that he had been suffering from chronic alcoholic gastritis, atrophic cirrhosis of the liver, and a diseased condition of the brain which could have been due to chronic alcoholism; this condition if it had been allowed to progress might have affected his mental competence. That the disease of the brain would have progressed to the point where it would affect his mental competence was not certain depending upon whether insured would have changed his mode of life. The disease was not incurable. It sometimes, but not always caused convulsions similar to epileptic seizures. There was no testimony that insured had ever suffered from convulsions.

Dr. C. R. Openshaw, the city physician who attended insured, stated the cause of death in the death certificate to be a basal skull fracture due to fall while in an epileptic attack. Dr. Openshaw testified that he had arrived at his conclusion that the basal skull fracture was due to a fall while in an epileptic attack from a history of the patient obtained from persons in the jail; that there is no pathology to epilepsy and therefore he did not know whether insured suffered an epileptic attack or not; that he relied on the stories told him at the jail by the jailor and other persons there.

The insurance company moved for a directed verdict in favor of the defendant on the grounds that the evidence did not tend to prove that the death of insured occurred as

a result directly and independently of all other causes of bodily injuries effected solely through external, violent, and accidental means; but that the death of insured resulted directly or indirectly from bodily or mental infirmity and disease.

This motion was overruled by the court and the case submitted to the jury on the issue of facts involved, and instructed on the law to be applied. The court also submitted to the jury a special interrogatory as follows:

"Was the fall which resulted in the final injury to the insured caused by the epilepsy or diseased condition of insured's brain?"

The jury found the answer to be "No." This interrogatory is of no value because there was no evidence as to what actually caused the fall.

Appellant has assigned as errors the failure of the court to grant its motion for a directed verdict, and in charging the jury as set forth in its instructions numbered 5 and 6. We will first determine whether the court erred in failing to grant a motion for a directed verdict in favor of defendant.

From the evidence introduced in this case it is clear that there is no dispute as to the fact that the direct cause of the death was a basal skull fracture which was the result of a fall. Griffin did not die from a disease which he had previous to the fall, nor from a disease aggravated by the fall and which in concurrence with it caused death. No one saw how this fall came about. On these facts alone, we are of the opinion there was sufficient evidence to be submitted to the jury on the question as to whether insured met his death as a result directly and independently of all other causes of bodily injuries effected solely through external, violent and accidental means. For the reader who desires a fairly exhaustive annotation of the subject, we refer him to the annotation in 131 A. L. R. commencing on page 240. The plaintiff established her burden of proof. In the case of *Browning* v. *Equitable Life*

*Assur. Co.,* 94 Utah 570, 80 P. 2d 348, this court has laid down the rule that the burden of going forward with the proof is on the insurer to establish that the injury or death came within the exclusion clause of the policy. Mr. Justice Wolfe in a concurring opinion has analyzed the question as to whether the proviso in the section governing accidental death is to be treated as an exclusion clause. His analysis and conclusion in that regard are adopted and made part of this opinion.

As to the question of evidence, under R. S. U. 1933, 35-2-20 a certified copy of death is made "prima facie evidence in all courts and places of the facts therein stated." It is of course elementary that evidence of that type may be explained or contradicted by competent evidence. See *Bozicevich* v. *Kenilworth Mercantile Co.,* 58 Utah 458, 199 P. 406, 17 A. L. R. 346. After the insurance company had introduced the certified copy of the death certificate in this case which gave the cause of death as basal skull fracture due to fall while in epileptic attack, the plaintiff called the doctor who signed this death certificate and he testified that he had first seen insured at about 10:30 o'clock in the morning of the day insured died; that at that time he was unconscious; that persons present in the jail had told him insured had suffered an epileptic fit and had fallen; that there is no pathology to epilepsy and the post mortem which he performed the afternoon of the same day insured died did not reveal whether or not insured had epilepsy for the above reason; that the post mortem did reveal that insured suffered from atrophic cirrhosis of the liver, chronic alcoholic gastritis and a diseased condition of the brain commonly known as "wet-brain"; that this condition of the brain sometimes produced convulsions similar to epileptic convulsions, but did not invariably do so; that the diseased condition of insured's brain was probably due to chronic alcoholism and had not extended to such a degree that it was incurable, but probably could have been cured had insured changed his mode of life. There was some

affirmative evidence that insured had not been known to have suffered from convulsions at any time during his lifetime, and that the statements of the persons at the jail as to the insured's having suffered epileptic attacks were pure conjecture due to the environment in which they were placed and that their experiences had taught them that if one fell it was due to epilepsy or fights. It is our opinion, in view of the above testimony, that there was sufficient evidence introduced tending to contradict or explain the statements in the death certificate. We are of the opinion that the court did not err in refusing to grant defendant's motion for a directed verdict in its favor.

The appellant also assigned as errors instructions Nos. 5 and 6 given by the court in its charge to the jury. Instruction No. 5 charged the jury as follows:

"If you find that the deceased, Walter Glen Griffin, had ailments of the body or mind, by reason of which he had a weakened condition, not having normal powers of resistance, he might nevertheless have met his death by reason of external, violent, and accidental injuries; and if you find from a preponderance of the evidence that he suffered injuries caused by external, violent, and accidental means, and that such injuries were the real, direct, and efficient cause of his death, the plaintiff is entitled to recover, even though you may believe that a normal or more robust person would have had a greater capacity to resist such injuries, and might not have been killed by them."

There was evidence in this case that the deceased was a frail man who appeared weak and sick and that he suffered from various ailments; although the evidence tended to prove that the sole cause of death was due to a basal skull fracture with its attendant hemorrhage into the skull, we do not believe from the above state of facts that the jury could have been misled by the instruction to the prejudice of the defendant, even though it is no doubt error to give instructions on

"a state of facts which there is no evidence tending to prove, or which the undisputed evidence in the case shows did not exist, even should

such instructions contain correct statements of law." *Jensen* v. *Utah Railway Co.*, 72 Utah 366, 270 P. 349, 358.

Instruction No. 6 reads as follows:

"The death certificate of Walter Glen Griffin has been admitted in evidence. Among other things, said certificate states, 'due to fall in epileptic attack.' You are instructed that such statement in said certificate is not conclusive and may be contradicted or explained, by other competent evidence."

Appellant does not claim that the instruction incorrectly states the law, but only that it singles out certain evidence to the prejudice of defendant. We do not believe there is any merit to the argument. There is no contention that the death certificate was introduced for any purpose other than to establish and prove cause of death. Cause of death was the only matter actually in issue. The fact of death was admitted. Even if the instruction might well have been worded differently, it was not prejudicial. It was proper for the court to instruct the jury that the declaration in the certificate as to cause of death was only prima facie evidence, and that it could be contradicted or explained by other competent evidence.

The fact is that the doctor who filled out the death certificate admitted that in making such declaration he relied on statements of other persons at the city jail who had not seen the insured suffer any epileptic attack and had no knowledge on which to base their statements. Their statements to the doctor on which he relied were purely conjectural. The declaration in the death certificate was almost if not entirely destroyed by the admissions of the ones who were instrumental in causing such statement to be inserted. It is true that the doctor found a condition, which under certain circumstances might produce convulsions similar to epilepsy, but he gave no professional opinion under oath that the fall was caused by an attack of epilepsy, and indeed in view of his admitted uncertainty as to causal factors the jury would have been justified in disbelieving

his opinion even if he had expressed an opinion under the circumstances.

The attempt to prove the decedent suffered epileptic attacks, did not rise beyond the level of conjecture or supposition. Hence, even if the instruction complained of was not correctly worded, appellant could not have been prejudiced. There was sufficient competent evidence to show that the insured fell, as a result of which he suffered a basal skull fracture and hemorrhage which produced death. In fact, there was no issue as to the immediate cause of death. The defendant insurance company claimed that the cause of the fall was a diseased condition, and there was no conclusive proof of the affirmative defense interposed by defendant, nor proof such as would entitle the defendant to a directed verdict.

Judgment affirmed. Costs to respondent.

LARSON, McDONOUGH, and MOFFATT, JJ., concur.

WOLFE, Chief Justice (concurring).

After much doubt and considerable research I concur. The result of my research and analysis, which forms the basis of my conclusion, I set out below as it differs somewhat from the approach and reasoning of Judge FAUST.

The provision governing the liability of the company for an extra $1,000 in case of accidental death reads, with presently irrelevant omissions, as follows:

"The amount * * * shall be payable * * * upon receipt of proof that the death of the insured occurred * * * as a result directly and independently of all other causes, of bodily injuries effected solely through external, violent and accidental means * * * provided, however, that no Accidental Death Benefit shall be payable if the death of the insured resulted * * * directly or *indirectly* from bodily or mental infirmity or disease in any form." (Italics added.)

The fracture was caused by the fall. The cause of the fall is unknown. I do not think there is any evidence to

show the reason for the fall, whether it was due to slipping, stumbling, losing balance, or other pure mishap or whether it was caused by some pathological condition. I think the real solution of this case depends on the meaning we give to the italicized portion of the statute and as to who has the burden of proof in regard thereto. I shall return to that in a moment. Meanwhile, I consider the portion not italicized.

The blow which caused the fracture or injury was due to a fall. I agree therefore that the death was caused directly by the injuries. I further agree that there was sufficient evidence to go to the jury on the question as to whether the pre-existing bodily condition was an efficient cooperating cause of death so as to prevent the injuries from being the cause of death independent of all other causes. That such condition may have presented to the effects of the injury a body of lowered resistance does not constitute it an independent cause; nor does the fact that a deceased may have lasted longer or even survived the effect of injuries if he had been a hale and hearty man prevent the injuries from being the direct cause of the death independently of all other causes. The nature of the injuries was such as could and does in many cases cause death. The fact that a weakened man may more easily succumb or that a very resistant body may survive does not prevent the injuries from being the sole cause of death viewed in the light of a determination of whether the pre-existing bodily condition was a cause. That condition must be an efficient cooperating if not a preponderating cause contributing to the death.

This brings us again to a consideration of the italicized portion of the Accidental Death provision. The first question which presents itself is as to whether the proviso clause exempts the company from liability where the accident—in this case the fall plus the blow—was caused by a pathological condition. If it makes no difference what caused the fall—accident or disease—then the verdict of the

jury must stand. If, on the other hand, the Company is not liable where the accident which caused the death was itself due to bodily or mental infirmity or disease then the question arises whether the plaintiff has the burden of proving that the fall did not have a pathological origin or whether the Company has the burden of proving that it had such origin. This, in turn, will depend upon whether the conditions of the proviso are to be considered as part of the affirmative case of plaintiff which he must prove or is a matter of defense in regard to which the Company has the burden.

The two questions are closely interwoven, but as far as possible, I shall consider the first question first. The language of the proviso is that if death (not injuries) is directly or indirectly caused by bodily or mental infirmity or disease the plaintiff cannot recover. It would seem that if a fall was caused by any inward failing due to disease or bodily or mental infirmity which fall resulted in a fracture, which fracture caused death, that death would be indirectly caused by a bodily or mental infirmity or disease. The best reasoned cases support this analysis.

In *Hall* v. *General Acc. Assur. Corp.*, 16 Ga. App. 66, 85 S. E. 600, 602, the court says:

"The true question in the case is whether he would have died at the time that he did die if he had not received the injury, conceding the injury to have been the result of an accident. If the jury should find that his fall was due to disease, and not an accident due to his misplacing his foot or miscalculating the distance to be descended from the edge of the sidewalk to the roadway of the street, or other accidental cause, there would be no right of recovery, because the loss, in that event, would not be due solely and exclusively to an accident as the proximate cause, but might be due to the disease. This is the first fact for a jury to determine. However, if on the other hand the assured accidentally slipped and fell upon the street, the mere fact that the fall hastened his death by aggravating the disease so that he only lived a week, when even if he had not fallen he might not have lived as much as a month, would not defeat a recovery on the policy."

If the disease precedes the accident and causes it, we have a different case than where the accident lights up or acts on a bodily infirmity such as heart disease and makes it an efficient cooperating cause of death (Illustrations: *Barnett* v. *John Hancock Mutual Life Ins. Co.*, 304 Mass. 564, 24 N. E. 2d 662, 126 A. L. R. 608; *Lucas* v. *Metropolitan Life Ins. Co.*, 339 Pa. 277, 14 A. 2d 85, 131 A. L. R. 235; *Campbell* v. *Aetna Life Ins. Co.*, 283 Mo. 63, 222 S. W. 778), and still a different case than where the accident and a disease, not set in motion by the accident, cooperate to cause death. Illustrations: *Robinson* v. *United States Health & Acc. Ins. Co.*, 192 Ill. App. 475; *McMartin* v. *Fidelity & Cas. Co.*, 264 N. Y. 220, 190 N. E. 414.

In the case of *Clark* v. *Employers Liability Assur. Co.*, 72 Vt. 458, 48 A. 639, 643, the court said:

"We think the view of the circuit court of appeals is correct. The policy does not insure against an accidental death which is caused indirectly by disease. If the insured's fall was caused by disease, that disease was the cause of his death, within the meaning of the exception. His helpless plight in the tracks of the approaching wheel was due to the apoplectic stroke, and to that alone. An accidental death by crushing is caused indirectly by disease, if the person falls in the place of danger because of disease. The death is caused directly and wholly by the crushing, but it is nevertheless caused indirectly by the disease. It was necessary for the plaintiff to show, not only that the injury received was the direct cause of death, but that disease did not indirectly cause the death by subjecting the insured to that injury. The charge failed to present this view to the jury. Judgment reversed, and cause remanded."

In *Manufacturers Acc. Indem. Co.* v. *Dorgan*, 6 Cir., 58 F. 945, 955, 22 L. R. A. 620, it was held that if the fall was caused by some temporary pathological cause not arising to the dignity of a disease or bodily or mental infirmity recovery could be had. The court said in considering a clause like the proviso herein involved that:

"In our opinion the adjective 'accidental' qualifies not only 'injuries,' but also 'death,' and therefore an accidental death by drowning does result from, and is caused indirectly by, fits, vertigo, or other disease,

if the fall into the water, from which drowning ensues, is caused by such disease."

So it was held that the word "indirectly" broadened the exceptions. But it was also held that where some temporary cause such as indigestion from lack of food not arising here to the dignity of a "disease" or "bodily infirmity" caused the fall the clause under consideration would not be applicable. In this regard, see also *Robinson* v. *Aetna Life Ins. Co.*, Tex. Com. App., 276 S. W. 900; *Fairclough* v. *Fidelity & Cas. Co.*, 54 App. D. C. 286, 297 F. 681; *Sturm* v. *Employers Liability Assur. Co.*, 212 Ill. App. 354; *United States Fidelity & Guaranty Co.* v. *Blum*, 9 Cir., 270 F. 946. In *Sheinman & Sons, Inc.*, v. *Scranton Life Ins. Co.*, D. C., 39 F. Supp. 398, 400, it is stated:

" 'Disease' as used in the policy was not intended to cover and does not apply to a temporary derangement of the functions of some organ. Instead, this term implies a substantial attack of illness, or a malady, which had some bearing on the general health of the insured."

In *Mandles* v. *Guardian Life Ins. Co. of America*, 10 Cir., 115 F. 2d 994, 999, the court said:

"No other cause or reason is suggested by the allegations of the plaintiff's petition for the act of thrusting the hand through the window except mental illness * * *,"

thus concluding that the septicemia caused by the cutting was indirectly caused by the mental illness and disallowing recovery. In *New England Mutual Life Ins. Co.* v. *Flemming*, 9 Cir., 102 F. 2d 143, the court did not think it necessary to consider the clause reading that the policy should not cover

"death resulting directly or indirectly from bodily infirmity * * * other than that occurring simultaneously with and in consequence of bodily injury."

The court held that when the fall was caused by Jacksonian epilepsy, the death was not caused by injuries effected "solely through external, violent and accidental means". I think the decision would have been on more solid ground if it had been based on the fact that death was indirectly caused by a bodily infirmity. I cannot agree that, whatever the cause of the fall, when injuries due to the fall directly cause death, that said death is not directly caused by injuries effected by "violent, external accidental means." Couch's Cyclopedia of Insurance Law, Vol. 5, Sec. 1142, states:

"In a Missouri case, a distinction between accident and disease as the cause of death is approved which, in substance, is that a recovery may be had if a fall of insured was the direct cause of bursting a blood vessel and consequent death, even though his arteries, heart, and kidneys were diseased; but that if a diseased condition of the arteries caused apoplexy, hemorrhage, and the fall, recovery would be precluded."

See also *DeReeder et al.* v. *Travellers Ins. Co.*, 329 Pa. 328, 198 A. 45.

In the opinion on rehearing in the case of *Browning* v. *Equitable Life Assur. Soc.*, 94 Utah 570, 576, 80 P. 2d 348, 352, Mr. Justice Larson, speaking for the court in construing a clause substantially like the proviso clause in this policy, spoke as follows:

"If the accident or injury resulting in the disability or loss was produced, caused, set in motion or operation by disease or infirmity, then it is indirectly caused by such disease or infirmity and is to be regarded as the result of sickness and not of accident. But if the accident produces, causes or sets in motion or operation a disease or infirmity, the same is deemed the result of the accident and not of disease."

I thought the above language dicta in that case because I thought the proof definite and unchallenged that the infection was, if not the sole cause of the prolongation of the disability, at least an efficient cooperating cause and hence the lengthened disability not due to the injury independent

of all other causes. But in this case, that language is material and states my view of the law in this case.

Apparently, contra are *Bohaker* v. *Travelers' Ins. Co. of Hartford, Conn.*, 215 Mass. 32, 102 N. E. 342, 46 L. R. A., N. S., 543; *Kelly* v. *Prudential Life Ins. Co. of America*, 334 Pa. 143, 6 A. 2d 55, 57. Although in the latter case, it was said:

"there was evidence from which it could be legitimately inferred that the fall * * * was the result of a misstep which she made in the dark on the stairway, without giving any consideration to the afterwards excluded declaration made to appellee that this was what occurred,"

such evidence is not discernible from the opinion. However, it is thus distinguished from *DeReeder* v. *Travellers Ins. Co.*, Supra.

I deem it unnecessary to prolong this opinion by citing or discussing any other cases on this point. Concluding that if the fall was caused by a bodily or mental infirmity or a disease, the death was indirectly caused by such named causes and the Company, therefore, not liable, it remains to determine who has the burden of proving whether the fall was by reason of such causes or because of accident. Since there is no evidence of the origin, reason or genesis of the fall, the party having the burden of proof loses in this case. There was no evidence from which the jury could answer the special interrogation as to whether the fall was caused by the diseased condition of the insured's brain. The answer must be ignored.

This case must not be confused with such cases as *Sheinman & Sons* v. *Scranton Life Ins. Co.*, supra, or *Taylor* v. *General Acc. Assur. Corp.*, 208 Pa. 439, 57 A. 830; or *United States Fidelity & Guar. Co.* v. *Blum*, supra, where the court held that there were facts or circumstances from which the jury might infer that the cause of the fall was an accident such as tripping, slipping, misstep or sudden turn or twist causing loss of balance or where the jury could infer that

it was caused by a temporary physical derangement as in the case of *Manufacturers Acc. Indem. Co.* v. *Dorgan,* supra, nor with such cases as *Selover* v. *Aetna Life Ins. Co.,* 180 Wash. 236, 38 P. 2d 1059, where there was an injury due to violent and external means and there were no circumstances from which it could be inferred that it was designed. Such cases create a presumption that will carry the case over dead center which is the case where the evidence is silent as to how the fall occurred or otherwise equally balanced. *Young* v. *Pacific Mut. Life Ins. Co. of Cal.,* 40 Ariz. 10, 9 P. 2d 191.

In *Layton* v. *Metropolitan Life Ins. Co.,* Mo. App., 89 S. W. 2d 576, 578, the court held:

"* * * when an insurance company pleads an exception provided in the policy, and relies upon it as a defense, it is an affirmative defense, and as in all other pleas of affirmative defense, the burden of proof is on the defendant to sustain it."

The prevailing opinion on rehearing in the Browning case, supra, stated:

"When an insured claims a right to recover under the accident provisions of the policy, all he need do is bring himself within the field therein defined and show his injury or disability was proximately and predominantly caused through violent, external and accidental means. He then has brought himself within the policy, and the terms thereof have been met. He is not required to show there was no latent causes, or other conditions which might have contributed to the result, indirectly or in part. His duty is affirmative; he is not charged with the duty of negativing anything."

I thought such statement in the Browning case, for reasons above noted, as immaterial and not there before us, but I think it applicable in this case. The real question then is this: Is the proviso clause in this policy a part of the condition or limitation of liability so as to require the plaintiff to prove that the death was not caused directly or indirectly by bodily or mental infirmity or disease or is such an exception or exclusion to liability which the insurer has the

affirmative duty of proving. Ordinarily, a proviso clause subtracts from the sweep of the matter to which it is a proviso, but not necessarily. The paragraph in the policy quoted as far as relevant in the beginning of this opinion makes the Company liable for death which ensues directly from injuries where such injuries are effected solely through violent, external and accidental means and where the death is not the result of other or independent causes. The fact of absence of independent causes is in effect an exclusion or exception but nowhere has it been so held unless it be in the case of *Mass. Bonding & Ins. Co.* v. *Dole, infra.* The cases as far as I have investigated hold the duty of proving the absence of independent causes to be on the plaintiff. How stands it then as to the proviso clause? The proviso clause as before stated pertains to the cause of death and covers among other things, indirect causes of death whereas the clause "independent of all other causes" is a limitation on the injuries as a direct cause of the death. It is perhaps because of the fact that the proviso clause can be read as if it began "No Accidental Death Benefit shall be payable if the death of the insured results directly or indirectly, etc.," that we have a distinct division in the holding of the cases as to whether the matter in the proviso clause of this policy is such as must be proved by the plaintiff in order to impose liability on the Company or whether it is a matter which must be affirmatively proved by the insurer to get out from under a liability which the plaintiff's proof has imposed upon it, i. e. something in the nature of a condition subsequent.

This division is mainly between the Federal and State cases. In the following cases, it was held that the burden of proof was on the party seeking to fasten liability on the insurer: *Wallace* v. *Standard Acc. Ins. Co.*, 6 Cir., 63 F. 2d 211; *New York Life Insurance Co.* v. *Roufos*, 6 Cir., 83 F. 2d 620; *Travellers' Ins. Co.* v. *Wilkes*, 5 Cir., 76 F. 2d 701; *Mandles* v. *Guardian Life Ins. Co. of America*, 10 Cir., supra.

This case does not flatly state that the burden of proof is on plaintiff but states that

"to come within coverage of policy, death must have resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means, and not caused directly or indirectly from bodily or mental infirmity or illness or disease in any form"

thus seemingly making the plaintiff prove as part of his case of defendant's liability the negative clause. *New England Mutual Life Ins. Co.* v. *Flemming,* 9 Cir., 102 F. 2d 143. The following state cases hold likewise: *Lubowicki* v. *Metropolitan Life Ins. Co.,* 114 Pa. Super. 596, 174 A. 649. But see *Trotter* v. *Industrial Health Acc. & Life Ins. Co.,* 115 Pa. Super. 487, 175 A. 884, 885.

The following state cases hold that the insurer has the burden of proving an exception to the risk insured against by the policy but only two of them are on the point as to whether a proviso clause as here involved constitutes an exception to or a limitation of the liability of the insurer: *Clay* v. *New York Life Ins. Co.,* 183 Minn. 275, 236 N. W. 305, where the court on the basis of *Lickleider* v. *Iowa, etc., Ass'n.,* infra, held without discussion that the burden was on the insurer to prove that disease caused the event which produced the injuries. *Massachusetts Bonding & Ins. Co.* v. *Dale,* 244 Ky. 50, 50 S. W. 2d 40, where the court even went so far as to hold that the burden was on the insurer to prove that the means of injury were intentional giving the term "accidental means" the efficacy of a limiting clause and citing *Bingham* v. *Continental Cas. Co.,* 219 Ky. 501, 293 S. W. 968, which involved a true case of limiting clause and defined the same.

*Mattson* v. *Maryland Cas. Co.,* 100 Cal. App. 96, 279 P. 1045; *Lamb* v. *Liberty Life Ins. Co.,* 129 Kan. 234, 282 P. 699; *Davilla* v. *Liberty Life Ins. Co.,* 114 Cal. App. 308, 299 P. 831; *North Carolina Mut. Life Ins. Co.* v. *Christian,* 131 Okl. 258, 268 P. 729; *Selover* v. *Aetna Life Ins. Co.,* 180

Wash. 236, 38 P. 2d 1059, holding that under clause "suicide (sane or insane) not included" burden of proof that it was suicide was on the insurer; furthermore, where plaintiff meets the burden or showing that the death was caused by external and violent means, the law raises a presumption that death was accidental making out a prima facie case for plaintiff.

*Aetna Life Ins. Co.* v. *Rustin,* 151 Ky. 103, 151 S. W. 366; *Lickleider* v. *Iowa State Traveling Mens' Ass'n,* 184 Iowa 423, 166 N. W. 363, 168 N. W. 884, 885, 3 A. L. R. 1295, where the court held that the defense, overexertion, was an affirmative defense seems clearly in error for such plea was simply another way of stating that the death was not caused by external violent or accidental means the burden of proving which the court seems to concede was on the plaintiff. Proof of overexertion, it would seem, should be admissible under a general denial.

The most helpful case we have found treating on the question of which party has the burden of proof as to whether accident or disease caused the accidental fall which in turn caused the injuries, under a provision as to death caused indirectly by disease, is that of *Harrison* v. *New York Life Ins. Co.,* 6 Cir., 78 F. 2d 421, 423, a Federal case. It states:

"Assuming without deciding that the resultant effect of two somewhat conflicting portions of the charge was to place the burden upon the plaintiffs to prove not only the accident and that death was solely effected by it independently of all other causes, but also that the accident itself was not brought about by physical or mental infirmity, illness, or disease, we give consideration to the contention thus outlined. The authorities are concededly in conflict. There are many state cases which hold that qualifying language such as here used creates an exception to the general insuring clause, and as such must be both alleged and proved by the insurer, with the burden upon it to bring itself within the exception. There are Federal cases which are in accord, such as *McCarthy* v. *Travelers' Ins. Co.,* 15 Fed. Cas. page 1254, No. 8,682, and others that are cited in our opinion in *Order of United Commercial Travelers* v. *Elliott* [6 Cir.], 65 F. 2d 79. We did not, however, in the Elliott case give our approval to the

doctrine there invoked with respect to the burden of proof, and careful consideration of the decisions in this and other circuits leads us to the view that it is unsound.

"In *Travelers' Ins. Co.* v. *Melick* [8 Cir.], 65 F. 178, at page 186, 27 L. R. A. 629, a general charge that to entitle the plaintiff to recovery it was his duty to establish the truth of every affirmative proposition which it was necessary for him to show in order to justify a recovery, was sustained as against a somewhat similar contention. This holding was approved by the same court in *National Masonic Accident Ass'n* v. *Shryock* [8 Cir.], 73 F. 774, and in accord are *AEtna Life Ins. Co.* v. *Ryan* [2 Cir.], 255 F. 483; *Kerns* v. *AEtna Life Ins. Co.* [8 Cir.], 291 F. 289; *Order of United Commercial Travelers* v. *Nicholson* [2 Cir.], 9 F. 2d 7; *Smith* v. *Mutual Life Ins. Co.* [5 Cir.], 31 F. 2d 280; *Lincoln National Life Ins. Co.* v. *Erickson* [8 Cir.], 42 F. 2d 997; *Brown* v. *Maryland Casualty Co.* [8 Cir.], 55 F. 2d 159. In this court approval was given to an instruction placing the burden upon the plaintiff to establish the fact that death was the result of accident only without the concurrence of any cause resulting from any disorder or disease or infirmity, in *Manufacturers' Accident Indemnity Co.* v. *Dorgan* [6 Cir.], 58 F. 945, at page 951, 22 L. R. A. 620. While approval of the charge was with reference to recitals therein specifically excepted to, yet the court had earlier in its opinion explicitly held that the burden of proof on the issue as to the manner and cause of the death was upon the plaintiff. In *New York Life Ins. Co.* v. *Ollich* [6 Cir.], 42 F. 2d 399, 403, we rejected the contention where the felony clause was in issue, that it was an exception placing the burden of proving felony upon the insurer. *Wallace* v. *Standard Accident Ins. Co.* [6 Cir.], 63 F. 2d 211, is not contra, as we were not concerned with any question respecting the burden of proof, but were determining only whether the plaintiff had established his case by substantial evidence. In *New York Life Ins. Co.* v. *Ross* [6 Cir.], 30 F. 2d 80, at page 82, this court gave approval to the general principle that the burden of proof in its usual and primary meaning as the risk of nonpersuasion of the jury never shifts, but remains with the affirmative throughout the case. Notwithstanding this general statement, the defense being suicide, the court was reluctantly moved to affirm the decision below, where an instruction shifted the burden of proof to the defendant by reason of the presumption against suicide therein invoked. This was in response to the holding of the Supreme Court in *Travelers' Ins. Co.* v. *McConkey*, 127 U. S. 661, 8 S. Ct. 1360, 32 L. Ed. 308, and our own decision in *Standard Life & Accident Ins. Co.* v. *Thornton* [6 Cir.], 100 F. 582, 49 L. R. A. 116, and under compulsion of the doctrine of stare decisis. No presumption however, either procedural or evidentiary, is here invoked, and we

see no occasion for pressing the doctrine of the Ross case further than was there required.

"Two of the federal Circuit Courts of Appeals have recently re-examined the rule as to the burden of proof in cases of accidental death. *Travelers' Insurance Co.* v. *Wilkes* [5 Cir.], 76 F. 2d 701; *Preferred Accident Ins. Co. of N. Y.* v. *Combs* [8 Cir.], 76 F. 2d 775. In each case the burden of proof was placed upon the plaintiff in respect to a defense limiting the general insurance clause. In the Wilkes case the court disapproved an instruction shifting the burden of proof to the defendant to establish suicide, and noted a distinction between the usual life policy containing an exception of death by suicide and one promising payment not for death, but for death by accident. In the latter the accident must be proved, thereby negativing suicide. We conclude upon this point that there was no error in placing the burden of proof upon the plaintiff."

The above cited State cases mainly pertain to the question of what constitutes an exception rather than burden of proof. Only two of them deal with a clause like the one here under discussion. When once determined whether the clause constitutes a condition of liability or an exception from it, the placing of the burden of proof follows.

The Federal cases, especially the Harrison case, deal specifically with the burden of proof holding it to be with the plaintiff. I am not, however, inclined to follow them for the following reason:

The clause reads, "or directly or indirectly from bodily or mental infirmity or disease in any form". The word "directly" seems to add nothing to the clause. If the death was caused directly by disease or bodily or mental infirmity without the intervention of an accident the Accidental Death Benefit section would not be applicable at all. If there were accidental injuries—that is, injuries not intended or not set in motion by an act intended to produce injuries—then the question of whether the death was caused "directly or indirectly" by bodily or mental infirmity or disease takes on two aspects. If we start the chain of causation from the injuries, whether the death is caused "directly or indirectly by disease", etc., brings up the same questions discussed

under the phrase "directly [by the injuries] independently of all other causes". If the investigation of the cause of death starts with the event which began the causal chain which resulted in an accident which in turn resulted in injuries which resulted directly in death, then the question is one as to whether the accident (fall, or other event) was caused by a bodily or mental infirmity or disease. It would seem that in such injury only does the clause have any meaning not already contained in the words "or directly independently of all other causes" and as to such injury the clause must be considered an exception. If the double indemnity is payable on account of death by accidental injuries then this clause excepts from the sweep of that liability accidental injuries (i. e. caused unexpectedly and unintentionally either by mishap or pathological condition) caused directly or indirectly by bodily or mental infirmity or by disease. I think this result accords too with considerations of justice and practicality. One solicited to buy an insurance policy containing this language would not suspect that if he should have a fall whose origin lay in obscurity and which resulted in injuries that caused death, his beneficiary could not recover because he could not show that it was not caused by a bodily or mental infirmity. The presumption that a fall was accidental and not designed is one thing. A presumption that a fall was caused by an accident and not by a bodily or mental infirmity or a disease is another thing. There is no such presumption especially where the insured was suffering from a disease which could have caused loss of balance. Hence, the insured is not helped by any presumption as in the case where the question is one between accident and intent.

We may now recapitulate:

1. For purposes of construing the accidental death benefit the policy should be construed as insurance against risks by accident—an accident policy.

2. The burden of proof that (a) the insured suffered injuries (b) the injuries directly caused the death (c) such cause was independent of all other efficient cooperating causes (d) the injuries occurred solely through violent means, external means and accidental means is on the plaintiff. Since death by suicide is not an accidental but an intentional means the evidence must by its purport negative such means but if the circumstances leave the mind equally poised as to whether the cause was self-destruction or accident the presumption against design may carry the burden over the point of equipoise. *Young* v. *Pacific Mutual Life Ins. Co. of Cal.,* 40 Ariz. 10, 9 P. 2d 191, 192, where, however, it would appear that the sentence reading

"in such case the burden of proving suicide or self-destruction would be on the insurer" should read "in such case the burden of going ahead would be on the insurer."

3. The Insurance Company has the burden of proving that death was caused by exceptions to the risk insured against and contained in the policy.

4. That outside of "suicide" which negatives "accidental means" the other causes exempting the insurer from payment of the accidental death benefit contained in the proviso clause are exceptions which free the insurer from liability for which it contracted.

5. The burden of proving that the fall which caused the fracture resulted from a bodily or mental infirmity or disease was, therefore, on the insurer.

6. That burden was not met, hence the verdict of the jury must stand.

I concur in holding that Instruction No. 5 or 6 were not prejudicial and that the death certificate while some evidence of the cause of death may be rebutted by other evidence or the sources of the information from which it was made be shown by the maker of the certificate or others to be unreliable or as having no basis in fact and thus the evidence rendered entirely nugatory. For the reasons abovementioned I concur.